955 F.2d 45
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joseph P. TRIMARCO, et al., Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 91-3453.
 United States Court of Appeals, Sixth Circuit.
 Feb. 18, 1992.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a tax refund action in which the plaintiffs, Joseph and Carmelia Trimarco, appeal from a summary judgment in favor of the government.
 
 
 2
 The Trimarcos filed personal federal income tax returns in which they claimed investment tax credits in respect of a Subchapter S corporation[1] known as "Convenient Food Mart, Inc., No. 3-106." The Internal Revenue Service denied having received a timely Subchapter S election for the corporation, and the investment tax credits claimed by the Trimarcos were denied on that basis. The government tells us in its brief on appeal that "the only issue presented by this case" is "whether the taxpayers could demonstrate that they properly filed a Subchapter S election for Convenient Food Mart."
 
 
 3
 In granting the government's motion for summary judgment and denying a motion by the plaintiffs to alter or amend the judgment, the district court decided that the taxpayers could not demonstrate the proper filing of a Subchapter S election consented to by the taxpayers in their capacity as shareholders. After reviewing the matter de novo, we conclude that the district court was wrong. The judgment will be reversed.
 
 
 4
 * In March of 1980, it appears, Convenient Food Mart, Inc., No. 3-106, was organized as an Ohio corporation. Joseph Trimarco and his wife Carmelia owned all of the stock of the newly-organized corporation. Mr. Trimarco has signed an affidavit swearing that while in the office of their attorney, Gregory Galan, both of the Trimarcos signed IRS Form 2553 (a Subchapter S election form) on the lines provided in "Box F," a section of the form that bears the legend, "We the undersigned shareholders consent to the election of the above corporation to be treated as an 'electing small business corporation' under section 1372(a)." The affidavit further attests that the name of "the above corporation" was "Convenient Food Mart, Inc., No. 3-106;" that the Trimarcos signed the form in order to elect Subchapter S status for this entity; and that they instructed attorney Galan to file the form with the IRS.
 
 
 5
 Attorney Galan has sworn that he did as his clients instructed. In an affidavit prepared originally for the IRS and subsequently attached to the Trimarcos' complaint in this case, Mr. Galan said that "On March 27, 1980 I sent in two signed copies of Internal Revenue Service form 2553 to the Internal Revenue Service, Cincinnati, Ohio for the taxpayer, CONVENIENT FOOD MART, INC., NO. 3-106."
 
 
 6
 Although the copies mailed to the IRS were signed, as attorney Galan stated under oath, the file copy attached to his affidavit was not. The copy appears to be complete in every other respect, and the government has presented no evidence demonstrating that the originals were not in fact signed. Neither has the government challenged the authenticity of the transmittal letter a copy of which was also attached to the Galan affidavit.
 
 
 7
 Dated March 27, 1980, and addressed to the IRS office in Cincinnati, Ohio, the transmittal letter stated that Mr. Galan was enclosing two different forms for Convenient Food Mart, Inc., No. 3-106: Form SS-4, an Application for Employer Identification Number, and Form 2553, the Subchapter S election.
 
 
 8
 It would seem fair to infer that attorney Galan's letter did not miscarry in the mails, if that were material, because the IRS did issue the requested employer identification number. In a letter to the corporation dated March 2, 1981, however, the IRS stated that its records showed no approval of the Subchapter S election; the letter asked if the corporation had a copy of the election.
 
 
 9
 Although a copy was eventually furnished, together with the Galan affidavit described above, the IRS declined to let the Trimarcos take the investment tax credits in question. The Trimarcos paid the taxes due without the credits and brought this suit for a refund of $12,168 plus interest and costs.
 
 II
 
 10
 After moving unsuccessfully to dismiss the taxpayers' action on grounds not relevant here, the government filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law because it did not have a signed Form 2553. Acknowledging that the plaintiffs had offered "an ex parte affidavit and an unsigned Form 2553," the government made no attempt to show that attorney Galan had perjured himself in swearing that the two copies of Form 2553 mailed to the IRS on March 27, 1980, were "signed copies."[2] What the government argued, rather, was that when the Trimarcos tried to comply with a now-discontinued IRS practice "of allowing a taxpayer to cure the nonreceipt of a Form 2553 by submitting a completed Form 2553, with verification that the original had been submitted on time," the Trimarcos made the mistake of submitting a copy that had not itself been signed.
 
 
 11
 Under the administrative practice, the government seemed to contend, it was not sufficient for the taxpayers to show that they had timely filed a Form 2553 that was complete in every detail and that bore the signatures of the shareholders. If the IRS lost the signed original, the government suggested, and if the taxpayers submitted an affidavit which, while showing that the original form had been signed, incorporated a file copy that was not itself signed, the taxpayers could not prevail.
 
 
 12
 "[T]he Internal Revenue Service's ultimate receipt of a completed Form 2553, bearing the consent of all shareholders," the government said, was "[e]ssential to the operation of [the now superseded administrative practice.]" Noting that the Trimarcos "do not dispute that they submitted only an unsigned Form 2553" after the IRS professed inability to locate the originals, the government wound up its argument thus:
 
 
 13
 "It follows that [the Trimarcos] failed to cure the original nonreceipt, even pursuant to the now superseded administrative practice. The Convenient Food Mart, Inc., No. 3-106, having failed to make a valid election of Subchapter S status, the United States is entitled to judgment as a matter of law."
 
 
 14
 Not addressing the argument made by the government, but noting that the taxpayers themselves had not testified that the original forms were signed, the district court entered summary judgment in favor of the government. The plaintiffs then filed a timely motion to alter or amend the judgment, attaching the above-described affidavit in which Mr. Trimarco swore that he personally had signed the Form 2553 in attorney Galan's office and had seen his wife sign the same form there. The district court denied the motion to alter or amend, and this appeal followed.
 
 III
 
 15
 The reasoning advanced by the government in its motion for summary judgment was less than compelling. The only issue presented, as the government now acknowledges, was whether the taxpayers could show that a properly signed Subchapter S election form had been timely filed on behalf of the Convenient Food Mart entity. The fact that attorney Galan may not have kept a signed copy of the form when he mailed in the originals is hardly conclusive proof that the originals were not signed. Attorney Galan having sworn that the originals were in fact signed, it was incumbent on the government to present something more than a discussion of its own administrative practices if it wanted to show the absence of any genuine issue as to the signing of the originals.
 
 
 16
 If the original forms mailed to the IRS under cover of attorney Galan's letter of March 27 had not been signed by the shareholders, the normal practice of the IRS would have been to return the forms with a letter stating that the election would be considered timely if resubmitted in proper form within 45 days. See Leve v. Commissioner, 49 T.C.M.1575 (1985). The government made no attempt to show that the forms at issue here were returned because they lacked signatures.
 
 
 17
 The more reasonable inference--and the inference to which the plaintiffs were entitled in a summary judgment proceeding--was that the forms did bear the requisite signatures, just as attorney Galan said they did, and that is why the IRS did not send them back. If the original forms turned up missing, the logical inference is not that the IRS had returned them for signature and then lost its record of having done so. The logical inference, rather, is that what the IRS lost was the original forms.
 
 
 18
 Perhaps the government can refute this inference at trial. Perhaps it can come up with something to demonstrate the existence of a genuine issue of material fact if the taxpayers should move for summary judgment, as we assume they may do if this case is not disposed of by agreement. It is quite clear, however, that the government failed to demonstrate that it was entitled to summary judgment in its favor.
 
 
 19
 The judgment is REVERSED, and the case is REMANDED for further proceedings not inconsistent with this opinion.
 
 
 20
 ENGEL, Senior Circuit Judge, concurring.
 
 
 21
 I concur in the reversal and remand to the trial judge for decision on the merits. I do not, however, join the language of the majority opinion insofar as it suggests, much less directs, a particular result which should be reached by the trial judge upon remand. I view whether in fact a validly signed election was timely filed as a close issue in which the credibility and motivation of the parties on both sides should be subject to particular scrutiny. Self-interest is a strong motivation on each side and the nature of the dispute is one in which the assertions of each side are not really capable of direct refutation. This is very much a credibility issue.
 
 
 22
 I have been particularly concerned that once it was revealed that the government did not, for one reason or another, have in its file a signed copy of the form, the taxpayers did not then promptly seek to file, nunc pro tunc, a duplicate election properly executed. As it is, no one seems to possess a properly executed election even today. It is not in the court; the plaintiffs do not have it; their lawyer does not have it; the government claims it does not have it and even the plaintiffs' lately filed affidavit does not supply the missing document but merely attests to the fact that one was properly executed in the first place.
 
 
 23
 I was also originally of a mind that a strict burden upon the taxpayer should be required in this type of case because of the potential for manipulation in case the taxpayer should desire to wait beyond expiration of the filing period until it became apparent which way to jump. Nevertheless, experience also shows it certainly is not impossible for the United States government and particularly the Internal Revenue Service to lose documents properly transmitted to it, and it seems wiser to leave this up to the impartial decision of the district judge who is in a better position than we to resolve the merits of the factual dispute.
 
 
 
 [1]
 Subchapter S of Chapter 1 of the Internal Revenue Code of 1954 authorized certain closely-held corporations to elect to be treated for tax purposes as pass-through entities (like partnerships, in other words) if the stockholders consented to the election. At the time with which we are concerned in this case, the requirements were set forth in 26 U.S.C. § 1372
 
 
 [2]
 In a rather striking demonstration of the fact that the IRS is no less capable of error than the rest of us, the government did attach to its summary judgment motion an ex parte "Certification of Lack of Record" purporting to show, according to the government's brief, that "[a] search of the Internal Revenue Service's records has failed to uncover either the Form 2553 or any evidence of its receipt." The Justice Department had asked the IRS for such a certification on Convenient Food Mart, Inc., No. 3-106. What Justice got back from IRS, and what was attached to the summary judgment motion, was a certification for "Trimarco, Inc." No certification was ever offered for the Convenient Food Mart entity. The Trimarcos, however, did not take issue with the government's informal representations that the original Form 2553 for Convenient Food Mart, Inc., No. 3-106 could not be found