**James R. CARROLL and Dorothy A. Carroll, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 94–1938.

United States Court of Appeals, Sixth Circuit.

Submitted Sept. 19, 1995.

Decided Dec. 26, 1995.

---

Dudley W. Taylor (briefed), Stephen W. Gibson (briefed), Dyer, James & Taylor, Knoxville, TN, for petitioners-appellants.

David L. Jordan, I.R.S., Office of Chief Counsel, Gary R. Allen, Acting Chief (briefed), Kenneth L. Greene, Curtis C. Pett, Sara. S. · Holderness, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for respondent-appellee.

Before: MILBURN and NELSON, Circuit Judges; MORTON, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is a tax case that presents an issue on which the circuits are divided: whether the common law "mailbox rule," under which proof of the mailing of a properly addressed communication bearing proper postage raises a rebuttable presumption of receipt in due course by the addressee, is a rule that applies to matter sent to the Internal Revenue Service by regular mail. Circuit precedent requires us to hold that the common law rule has no application where the IRS is involved. In this circuit, a taxpayer who sends a document to the IRS by regular mail, as opposed to registered or certified mail, does so at his peril.

I

On November 8, 1986, petitioner James R. Carroll, a resident of Knoxville, Tennessee, purchased the stock of a Tennessee corporation known as Volunteer Distribution Co. Mr. Carroll decided to elect "S-corporation" tax status for Volunteer, so that the earnings and losses of the corporation would be passed through to him as owner. The appropriate election form (IRS Form 2553) was duly signed by Mr. Carroll as an officer of the electing corporation and as the consenting stockholder.

Mr. Carroll signed the form on January 21, 1987. If it were to be effective for the tax year at issue here, the signed form had to be filed with the IRS no later than Monday, March 16, 1987.

Mr. Carroll arranged to have the form mailed to the IRS Service Center in Memphis, Tennessee, on the same day the form was signed. His secretary put the signed

---

* The Honorable L. Clure Morton, United States District Judge for the Middle District of Tennes-

see, sitting by designation.

form in a properly addressed envelope, affixed the necessary postage, and handed the envelope to a messenger who made a special trip with it to the Knoxville post office. The messenger deposited the envelope in a mail receptacle inside the post office. The Tax Court subsequently found as a fact, following an evidentiary hearing, that the signed form had been mailed to the IRS on January 21, 1987.

The IRS does not challenge the accuracy of Tax Court's factual finding that the signed form was properly mailed to the Memphis Service Center some 54 days before the filing deadline. Unfortunately for Mr. Carroll and his wife, however, the IRS has not been able to locate the original form. The records of the Memphis Service Center do not indicate that the form was ever filed.

When asked at the hearing if forms are ever lost at the service center, a representative of the IRS responded with an unqualified "yes." The IRS witness gave the same answer to a question about the loss of tax returns.[1] If Mr. Carroll's Form 2553 was not lost in the mail by the United States Postal Service, it seems virtually certain that the form was lost at the service center by the IRS.

Mr. Carroll and his wife filed a joint federal income tax return for 1987 in which they claimed a pass-through loss with respect to Volunteer Distribution Co. The claimed loss, which was carried over to the Carrolls' 1988 return, was disallowed by the IRS on the ground that there had been no election to have Volunteer treated as an S-corporation in 1987. The disallowance resulted in the finding of a tax deficiency for 1988.

Mr. and Mrs. Carroll filed a petition in the Tax Court seeking a redetermination of the deficiency. The Tax Court conducted a hearing, as noted above, and found that the S-corporation election form had been mailed to the IRS on January 21, 1987. Because the form had not been sent by registered or certified mail, however, and because the United States Court of Appeals for the Sixth Circuit (the court to which an appeal from the Tax Court decision would lie) refuses to apply the rule under which there would have been a presumption that the IRS received the mailing prior to March 16, 1987 (see *Miller v. United States,* 784 F.2d 728 (6th Cir.1986), and *Surowka v. United States,* 909 F.2d 148 (6th Cir.1990), tax cases rejecting the common law mailbox rule), the Tax Court concluded that the evidence was insufficient to prove a timely filing of the form. The Tax Court decided that there was a deficiency of $22,479.25 in the Carrolls' 1988 federal income tax, and the Carrolls have appealed that decision to this court.

## II

■ Prior to 1954, all documents mailed by a taxpayer to the Internal Revenue Service were considered to have been "filed" with the agency at the time of actual receipt. See *United States v. Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 509, 60 L.Ed. 897 (1916). Federal courts routinely applied the common law presumption that properly mailed documents would actually be received in due course by the addressee, see *Estate of Wood v. Commissioner,* 92 T.C. 793, 798–99, 1989 WL 33664 (1989) (en banc), aff'd, 909 F.2d 1155 (8th Cir.1990) (citing numerous cases), but unless same-day delivery was in fact the norm, receipt by the addressee was not deemed to have occurred on the same day as the mailing. The presumption seems to have been that the addressee would receive the material after a normal interval—two or three days, *e.g.,* under current Postal Service norms.

Congress altered the actual-receipt rule with the enactment of 26 U.S.C. § 7502 in 1954. In § 7502(a) Congress said that a document mailed to the IRS on or before a filing deadline and delivered by the Postal Service after the deadline would be "deemed" to have been received on the date of the postmark if the postmark itself was not after the deadline. And for purposes of § 7502, Congress went on to say in § 7502(c)(1)(A), a showing that the document

---

1. An in-house IRS study described in an article published in the *Washington Post* on February 19, 1989, reportedly found that the IRS loses about two million tax documents from its files each year.

had been sent by registered mail would constitute prima facie evidence of delivery to the IRS. The date of registration—again "[f]or purposes of this section"—would be deemed the postmark date. § 7502(c)(1)(B).

The statute was silent as to what the result would be where, as here, a taxpayer could prove that a document addressed to the IRS had been placed in the mails, with postage attached, well before the filing deadline, but because of the subsequent loss of the document by the government—and because of the use of regular mail, rather than registered or certified mail—the taxpayer could offer no direct proof that the document had been postmarked on or before the filing deadline and had actually been delivered to the IRS. Before the statute was passed, as we have seen, the taxpayer could rely on the common law presumption of delivery. Did the statute have the effect of repealing the presumption in all cases other than those where registered or certified mail was used?

In *Wood, supra,* the Tax Court squarely rejected the proposition that 26 U.S.C. § 7502 means that delivery of mail which the IRS has not been able to locate can be proved only by producing a receipt for registered or certified mail. In *Wood,* as in the case at bar, an election form was sent to the IRS by regular mail. The petitioner in *Wood* offered unimpeachable proof of mailing, just as the Carrolls did in the case at bar, but the IRS claimed that the election form had never been received. The *Wood* document was mailed on the Friday before a Monday filing deadline, and the postmaster to whom the document had been handed for mailing testified that she promptly postmarked the envelope before placing it in a sack of outgoing mail. This proof that the postmark was affixed on Friday meant that Friday would be deemed the date of delivery, under 26 U.S.C. § 7502(a), but only if the document had actually been delivered by the Postal Service to the IRS. Because the petitioner had not used registered mail, the prima facie evidence of delivery referred to in § 7502(c)(1) (*i.e.,* proof of registration) could not be produced. The IRS argued that § 7502(c) was "the *exclusive* means of proving delivery," but the Tax Court rejected this argument

and concluded that § 7502(c) was merely a "safe harbor." *Wood,* 92 T.C. at 797–98 (emphasis by the court).

"The provision for Congressionally sanctioned, assured method of proof," said the Tax Court in *Wood,* "... does not in law or logic forbid any other method unless Congress expressed intent to exclude other methods. No such expression exists. There is no language in section 7502 or its legislative history to suggest that Congress intended section 7502(c) to be the only way to prove delivery." *Id.* at 798. Delivery could be shown under the rule—"well-settled" since the Supreme Court's decision in *Rosenthal v. Walker,* 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395 (1884)—"that, absent contrary proof of irregularity, proof of a properly mailed document creates a presumption that the document was delivered and was '*actually* received by the person to whom it was addressed.'" *Wood,* 92 T.C. at 798, quoting *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932) (emphasis by the *Wood* court).

In affirming the Tax Court's decision in *Wood,* the Court of Appeals for the Eighth Circuit applied the familiar principle that "[w]hen interpreting a statute, we must consider the statute in light of judicial concepts [in this case, the common law presumption of delivery] existing before it ... was enacted." 909 F.2d at 1160. Congress must be supposed to have known of the common law presumption of delivery, the court said, and "[t]he normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Id.,* quoting *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), as quoted in *Stillians v. State of Iowa,* 843 F.2d 276, 280 (8th Cir.1988). "[A]bsent a clear manifestation of contrary intent," in other words, "a newly-enacted or revised statute is presumed to be harmonious with existing law...." *Wood, id.,* quoting *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 277 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The common law presumption of de-

livery applied against the IRS before the enactment of § 7502, and the Eighth Circuit saw "no reason" why it should not continue to apply against the IRS afterward. *Wood,* 909 F.2d at 1159.

■ As the Eighth Circuit recognized, the holding in *Wood* probably cannot be reconciled with the holding of the Sixth Circuit in *Miller v. United States,* 784 F.2d 728 (1986). In *Miller,* as in *Wood,* a taxpayer sought to invoke the judicially-created presumption that "material mailed is material received." *Miller,* 784 F.2d at 730. As in *Wood,* the plaintiff in *Miller* maintained that § 7502 was a "safe harbor" that did not bar reliance on the judicially created presumption. *Id.* This court disagreed. Citing *Deutsch v. Commissioner of Internal Revenue,* 599 F.2d 44, 46 (2d Cir.1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980), where the Second Circuit construed § 7502 as demonstrating "a penchant for an easily applied, objective standard," the *Miller* panel concluded that "the *only* exceptions to the physical delivery rule ... are the two set out in section 7502...." *Miller,* 784 F.2d at 731 (emphasis supplied).[2]

In *Wood* the Eighth Circuit recognized the broad sweep of *Miller* and *Deutsch,* but simply disagreed with the holdings of those cases. "To the extent that the Sixth and Second Circuits in *Miller* and *Deutsch* hold that a presumption of delivery can *never* be used to satisfy the requirement of delivery in section 7502(a)(1), we disagree." *Wood,* 909 F.2d at 1159 (emphasis in original).

The Ninth Circuit has also disagreed with the Second and Sixth Circuits on this point. In *Anderson v. United States,* 966 F.2d 487, 491 (9th Cir.1992), the court expressed itself as follows:

"... we agree with the Eighth Circuit that enactment of section 7502 did not displace the common law presumption of delivery. The statute itself does not reflect a clear intent by Congress to displace the common law mailbox rule [under which proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee]."

Both *Miller* and *Surowka* were cited in *Anderson,* but neither was found to be persuasive.

Our court was invited, not long ago, to reconsider *Miller* and *Surowka* in an en banc proceeding. The recent case of *BMC Bankcorp, Inc. v. United States,* No. 94–5842, 1995 WL 363387 (6th Cir. June 15, 1995), presented the question whether a taxpayer who did not come within the terms of § 7502 could avail himself of the common law presumption that material properly mailed to the IRS will, in the normal course of time, be delivered. Refraining from any expression of opinion as to the soundness of the Eighth and Ninth Circuit decisions contrary to *Miller* and *Surowka,* a three-judge panel concluded that the clear precedent in this circuit required a negative answer. The taxpayer petitioned for rehearing en banc, and the active members of the court were polled on whether to grant the petition. A number of judges voted in favor of rehearing (it may come as no surprise to the attentive reader that the author of the present opinion was among them), but the number was less than a majority. See order of October 10, 1995, denying the petition. Unless the Supreme Court or Congress should decide otherwise, therefore, *Miller* and *Surowka* will remain good law in the Sixth Circuit.

**2.** In effect, the two statutory exceptions make the filing complete at the time a mailing is postmarked, regardless of the time of actual delivery, if (1) the IRS acknowledges receipt of the document with a postmark that is not later than the filing deadline, or (2) the document is sent by registered mail, and the date of registration—which is equated by statute with the postmark date—is not later than the filing deadline.

Strictly speaking, of course, the taxpayers in the case at bar are not contending that they come within a judicially created "exception" to the rule that a filing is complete only at the time of actual delivery to the IRS. The taxpayers contend, rather, that when they proved that their S-corporation election form was mailed to the IRS 54 days in advance of the filing deadline, they made a prima facie showing of timely receipt—actual receipt, not constructive receipt—by the agency. Like the Eighth Circuit, we are satisfied that the contention is inconsistent with *Miller.* See *Surowka v. United States,* 909 F.2d 148 (6th Cir.1990), where *Miller* was interpreted as ruling out "circumstantial proof" of timely filing where neither of the statutory exceptions applied.

Mr. and Mrs. Carroll argue that their situation is different from that of the taxpayers in *Miller* and *Surowka* because here there is "compelling" evidence, over and above any common law presumption, that their Form 2553 was in fact received by the IRS. The evidence consists of a preprinted address label supplied by the IRS for use on Volunteer's 1987 tax return. The label bears a new employer identification number, and the Carrolls contend that the issuance of the new number proves that the S-corporation election form was received by the IRS. In support of this contention the Carrolls cite our unpublished opinion in *Trimarco v. United States,* No. 91–3453, 1992 WL 28082 (6th Cir. February 18, 1992).

In *Trimarco* the taxpayer mailed the IRS a transmittal letter accompanied, according to the letter, by both an S-corporation election form and a form applying for an employer identification number. The IRS subsequently issued the employer identification number, and we inferred from this that the taxpayer's communication did not miscarry in the mails.

The case at bar is different. Here the S-corporation election form was *not* accompanied by a request for an employer identification number. Issuance of the number, accordingly, does not prove receipt of the election form. Unless the Carrolls can invoke the common law mailbox rule, with its nonstatutory presumption of delivery, they must lose their case.

If the Carrolls had been residents of any state other than Tennessee, Kentucky, Ohio, Michigan, Connecticut, New York, or Vermont, the Tax Court would have allowed them to invoke the presumption of delivery and would have decided this case in their favor. Because the Carrolls live in Tennessee, however, the presumption of delivery does not work for them. Having failed to use registered or certified mail when they sent the Form 2553 to the IRS, the Carrolls must pay an additional $22,479.25 in taxes.

**AFFIRMED.**