**Frank R. LEWIS; Janis K. Lewis,**
**Plaintiffs–Appellants,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

**No. 97–15987.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 1998.

Decided May 22, 1998.

S. Ross Kochenderfer, Jr., Auburn, CA, for plaintiffs-appellants.

Kenneth L. Greene, Dept. of Justice, Washington, DC, for defendant-appellee.

Before: WHITE,* Associate Justice, and NOONAN and THOMAS, Circuit Judges.

NOONAN, Circuit Judge:

Frank R. and Janis K. Lewis, taxpayers, (the Lewises) appeal from the judgment of the district court in their suit against the United States. The Lewises have incurred over $15,000 of legal fees in their successful effort to recover the sum of $1,794.92 that the government finally conceded was due them. The sole issue on this appeal is whether the government was "substantially justified" in its position of refusing to make this payment up to the point that it capitulated and agreed the $1,794.92 was owed. Taking into account all the circumstances of the case, we hold that the government has not established that its position was substantially justified and, accordingly, reverse the judgment of the district court and award attorney's fees and costs for the litigation the Lewises had to undertake to recover the sum owed.

## FACTS

According to Frank Lewis's deposition, at about 11:00 o'clock on the morning of Thursday, April 15, 1993, he deposited at the United States Post Office at 371 Nevada Street, Auburn, California, an "Application for Automatic Extension For Time To File U.S. Individual Income Tax Return for Tax Year 1992." The form was signed by himself and his wife Janis and enclosed in a stamped envelope properly addressed to the Internal Revenue Service (the Service). Accompanying it were two checks, both dated April 15, 1993, in the total amount of $5,000, made out to the Service. On the same date he filed the Lewises' request for an extension of time to file their state return accompanied by a check also dated April 15, 1993. The latter check was cashed by the state on April 16, 1993.

The Lewises' Application For Automatic Extension was in mail delivered to the Ogden Service Center in bags which were stamped on the date of receipt from the Post Office. In April 1993, 9,634,446 pieces of mail were received at the Ogden Service Center. The Lewises' application was stamped as received by the Service on April 26, 1993 and was subsequently denied as untimely filed. The Lewises did file a federal income tax return for 1992, but, as it was late, they were assessed a penalty, which, together with interest, eventually came to $1,794.92.

On May 1, 1995 S. Ross Kochenderfer, an Auburn attorney admitted to practice in the Tax Court, was retained by the Lewises. On the same day he telephoned the IRS appeals office and discussed the position of the Lewises, asking in particular for a copy of the postmarked envelope in which the Lewises' Application for Automatic Extension had been filed. The Service did not produce the envelope. After further communication and correspondence, the Service levied upon the Lewises' bank account and collected the amount the Service believed was owed. Thereafter the Lewises invoked the Freedom of Information Act to obtain documents from the Service relating to their filing and in particular a copy of the postmarked envelope. They received their entire "penalty file" consisting of 63 pages of documents including some envelopes, but none of the documents included the envelope in which the Application for Automatic Extension had been mailed.

## PROCEEDINGS

On June 8, 1995 the Lewises filed a claim for refund of the $1,794.92. On September 20, 1995 the Service disallowed the claim. On December 20, 1995 the Lewises filed suit in the district court seeking refund of the $1,794.92, together with interest, costs, and attorney's fees, and requesting jury trial.

On February 12, 1996, the Lewises moved for summary judgment setting out in substance the above facts. On March 19, 1996 the United States filed a cross-motion for

---

* The Honorable Byron R. White, Retired Associate Justice, United States Supreme Court, sitting by designation.

summary judgment. An exchange of memoranda and supplemental declarations on both sides followed.

On September 24, 1996 the district court filed an opinion denying the government's motion for summary judgment. The district court stated: "The Lewises have produced sufficient evidence to convince a fact-finder that their return was timely filed." In a footnote to this opinion, the district court denied the Lewises' motion for summary judgment, stating, "Because there is some evidence that the letter was not timely mailed—principally the date of receipt—summary judgment for plaintiffs must be denied."

On October 9, 1996, less than three weeks later, the United States stipulated to judgment in favor of the Lewises in the amount of $1,794.92.

The Lewises' lawyer, Ross Kochenderfer, put in over 100 hours of work on the litigation. He has charged a below-market rate of $150 per hour for his work. The Lewises are thus liable for over $15,000 in legal fees. The Lewises moved for the award of attorney's fees under 26 U.S.C. § 7430, which provides for an award of attorney's fees to the prevailing party unless the government "establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i). Under the statute the maximum amount the Lewises would receive was approximately $10,000.

The United States opposed the motion. After an exchange of memoranda and declarations the district court on February 18, 1997 denied the Lewises' request. The district court added: "The court can well understand the plaintiffs' sense of unfairness in this case. . . . To find that the position of the United States was substantially justified given the state of the law, however, is not to say that the United States exercised wise discretion in dealing with citizens who have made good faith efforts to comply with the tax laws."

The Lewises appeal.

### ANALYSIS

■ The test for whether the government's position is substantially justified is whether a reasonable person would think the government's position was reasonable. *Wang v. Horio,* 45 F.3d 1362, 1364 (9th Cir. 1995). In applying this rule in the context of a tax case, we think that the reasonable person to be had in mind is the reasonable person in the context of a dispute with the Service. The statute, unlike the more general Equal Access to Justice Act, 28 U.S.C. § 2412, was enacted expressly to govern disputes with the Service.

■ We are reasonably sure that a reasonable person would consider it little short of outrageous for the government to stonewall for a year and a half and finally concede the error of its position only when the government faced the prospect of going before a jury to defend its retention of the plaintiffs' money. We are also reasonably sure that a reasonable person would think it little less than an enormity for the government to force taxpayers to incur legal costs of over $15,000 in order for them to obtain what was rightfully owed.

■ The law of this circuit is clear. We go by the "mail box rule." Proper and timely mailing of a document raises a rebuttable presumption that the document has been timely received by the addressee. *Anderson v. United States,* 966 F.2d 487, 491 (9th Cir.1992). The rule applies to mailings by taxpayers to the Service. *Id.* Consequently, the Service knew that the Lewises had timely filed if Frank Lewis was truthful about when he had mailed the application.

The Service, of course, does not have to take a taxpayer's unsupported word, but when a taxpayer with an unblemished reputation for paying taxes produces circumstantial evidence supporting his word, the government needs more than a skeptical smile to support its doubt of his credibility. The Service says it had more: the date stamped as "Received" at the Ogden Service Center. The justification was inadequate. No evidence was produced that a bag stamped "Received" on April 26 contained mail mailed after April 15. The Post Office employee who testified as to postal procedures declared the Post Office's goal was to deliver 95 percent of mail to Ogden within three days of mailing. Dealing with the over nine million

mailings to the Ogden Service Center, the Post Office may or may not have met its goal, and even if that goal were met, over 450,000 pieces would have been delivered late. The Service had no reason to treat the Post Office's hopes as a certainty governing the Lewises' application. The date on which documents mailed on April 15 are marked as received at Ogden is not evidence as to when they were mailed.

The sure way of refuting the taxpayers' contention was to produce the postmarked envelope. The Service had not preserved it. This failure tells against the Service, for Congress has specified that the postmark "shall be deemed to be the date of delivery." 26 U.S.C. § 7502(a)(1). Once the letter is mailed, control of this vital evidence is completely in the hands of the Service. When the Service destroys or fails to keep the evidence, the Service must bear the adverse inference to be drawn.

Paying lipservice to our decision in *Anderson,* the Service appears to have thought that our decision in that case rested on the taxpayer's sworn testimony that she had seen a postal clerk affix the postmark on the appropriate date. It was unreasonable to read *Anderson* in such a wooden way. That someone mailing a letter will actually see the postmark being applied is not an ordinary experience. This court could not have meant to say that only if the taxpayer witnessed this unusual happening would the taxpayer have proof of timely mailing. Rather, *Anderson* stands for the broad rule that if a taxpayer furnishes credible evidence of the date her letter to the Service was postmarked, that date is the date that controls. If it were otherwise, the postmark rule enacted by Congress would have effect, when the Service destroyed the envelope, only in the rare instance in which the postal clerk was perceived in the act of affixing the postmark.

In the instant case the Lewises did provide credible information that Frank Lewis had mailed the application on April 15, 1993. In addition to his own sworn declaration—that of a law-abiding, taxpaying citizen—the Lewises showed that they had signed three checks all dated April 15, two of them received by the Service with the application. The third check of this date went to the State of California in payment of their state income tax. It was cashed by the state on April 16, 1993, indubitable proof that it had been mailed before that day. Given that California taxpayers generally must calculate their federal taxes before calculating their state taxes when filing an application for a state extension, that the Lewises had completed and mailed their state tax extension application by April 15 is strong circumstantial evidence supporting Frank Lewis's statement as to when he mailed the federal application.

Advised by a clearly competent tax attorney, the Lewises must have known when they entered on litigation that they would spend more than they could get. Their attorney himself, who would have been aware of the statutory rate of compensation, would have known that he could not expect to be paid in full by the government. So, neither the Lewises nor Kochenderfer entered this lawsuit with the intention of gaining a windfall at the government's expense. The Lewises' motivation had to be the conviction that they had complied with the laws and had been improperly penalized. Without the envelope indicating the postmark on the Lewises' return, the government lacked the evidence to refute this earnest and credible contention. In these circumstances, the willingness of the Service to force the Lewises to litigate was a position that the government has failed to show to be substantially justified.

The Lewises are not tax protestors. As already noted, the district court characterized them as citizens who had "made good faith efforts to comply with the tax laws." The officials of the Service who dealt with the Lewises prior to the government's capitulation were in a position where they could have and should have made the same assessment of the Lewises' good faith.

We do owe deference to the district court, which exercised its discretion. We believe, however, that the district judge, while he appreciated the unfairness felt by the plaintiffs, did not sufficiently take into account the disparity between the amount sought and the obstacles the government put in the way of obtaining it such that the plaintiffs' legal bill was run up by the government's opposition.

Nine times out of ten, the government is going to win in this kind of situation if the government is not made to bear the costs of its opposition, because most people will have neither the money nor the persistence to stay in the ring with the government.

Is the case just "a tempest in a teapot"—a suit for attorney's fees for litigation in which the amount originally at stake was under two thousand dollars? A small tea tax was at the start of our Revolution. The smallness of the stake does not measure the magnitude of the injury. The income tax law of the United States is a mighty engine for the production of revenue. The Internal Revenue Service serves the country well in collecting this vast amount. But in its zeal to collect every last penny owing the United States the Service cannot forget that its ultimate responsibility is to serve the citizens of this country.

**REVERSED and REMANDED** for the award of the costs of litigation and attorney's fees at the statutory rate for legal services beginning with the filing of the complaint.

WHITE, Associate Justice, (Ret.), Dissenting:

For several reasons I would affirm the opinion by Judge Levi holding that the position of the United States was substantially justified.

First is the decision in *Estate of Wood v. Commissioner*, 909 F.2d 1155 (8th Cir. 1990), by the Eighth Circuit, affirming an en banc decision of the Tax Court. The court rejected the United States' position that 26 U.S.C. § 7502 required production of the postmark and that the section preempted the common law mailbox rule. The *Wood* decision, however, insisted that there be "direct" evidence of the postmark, accepting the testimony of the Postmaster that she did postmark the envelope. The court below admitted evidence of an attorney who testified he saw the postmark being stamped but the Eighth Circuit relied only on the Postmaster's evidence. *Wood* also rejected the submission of the United States that the common law mailbox rule was preempted by § 7502.

Second this circuit found the facts in *Anderson v. United States*, 966 F.2d 487 (9th Cir.1992), similar to those in *Wood* and adopted its reasoning. Contrary to the pre-

sentation by the IRS, *Anderson* concluded that § 7502 did not set forth exclusive limitations on admissible evidence to prove timely mailing. In *Anderson* the district court admitted the testimony of the taxpayer who saw the postmark being stamped on the envelope as well as the testimony of the friend who had stayed in the taxpayer's automobile. In deciding the appeal, the court chose to mention only the evidence of the taxpayer and adopted the direct evidence rule of *Wood* as well as the common law mailbox rule.

Judge Levi relied upon *Wood* and *Anderson.*

The majority's reference to the common law mailbox rule as the law of this circuit provides no help to the taxpayers in this case. The common law mailbox rule provides "that a timely and properly mailed document is presumed *timely delivered.*" *Anderson*, 966 F.2d at 489 (emphasis added). The rule can help a taxpayer in two ways: 1) a mailed document is presumed delivered; and 2) the delivery is accomplished in a timely manner. *See id.; Carroll v. Commissioner*, 71 F.3d 1228, 1230, 1232 (6th Cir. 1995), *cert. denied*, 518 U.S. 1017, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996); 9 Wigmore, *Evidence* § 2519 (Chadbourn rev. 1981 & Best Supp.1997). Under the rule, a taxpayer could establish timely filing by proving that the document was mailed such that it would be received by the Commissioner prior to the filing deadline if the postal service followed its normal delivery schedule. *See Arkansas Motor Coaches v. Commissioner*, 198 F.2d 189, 190–91 (8th Cir.1952) (stating rule that document must be mailed such that it would be timely received by the Commissioner in the ordinary course of the mails). The Sixth Circuit has discussed the contours of this rule:

[Prior to the enactment of § 7502], [f]ederal courts routinely applied the common law presumption that properly mailed documents would actually be received in *due course* by the addressee, but unless same-day delivery was in fact the norm, receipt by the addressee was not deemed to have occurred on the same day as the mailing. The presumption seems to have been that the addressee would receive the material

*after a normal interval*-two or three days, *e.g.*, under current Postal Service norms. *Carroll*, 71 F.3d at 1230 (emphasis added) (citations omitted). In sum, the mailbox rule does not extend the filing deadline for tax documents.

The taxpayers in this case clearly understand that reliance on the common law mailbox rule provides no help to them (indeed, as just noted, they lose if it provides the governing law): "Taxpayers do not assert that they are entitled to judgment based upon the 'common law mailbox rule.'" Appellants' Opening Br. at 26; *see id.* at 30 ("The issue demands resolution based upon the provisions of IRC § 7502."). Perhaps the majority interprets *Anderson* as applying a presumption that a document is postmarked the same day it is mailed, and therefore the taxpayers are entitled to the benefit of § 7502. However, the majority does not explain how to interpret *Anderson* in this manner, and *Anderson* allowed the taxpayer to introduce extrinsic evidence because she "provided direct proof of a timely postmark because she actually saw the postal clerk stamp her document." 966 F.2d at 491.

Third, Judge Levi remarked that in his view the issue had not been particularly decided by the Ninth Circuit although it was a close case. This, it seems to me, is enough to support the position of the United States. *See TKB Int'l, Inc. v. United States*, 995 F.2d 1460, 1468 (9th Cir.1993); *Minor v. United States*, 797 F.2d 738, 739 (9th Cir. 1986).

Fourth, the United States did not admit error in this case. Even if it had erred on the merits, the government's position could be substantially justified. *See Pierce v. Underwood*, 487 U.S. 552, 568, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ("The unfavorable terms of a settlement agreement ... cannot conclusively establish the weakness of the Government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements."); *Kali v. Bowen*, 854 F.2d 329, 332, 334 (9th Cir.1988).

The standard of review in this case is highly deferential. *See Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1279 (9th Cir.1997). "We may reverse only if the dis-trict court based its decision that the [government] was not substantially justified 'on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision.'" *Id.* at 1278 (quoting *Oregon Natural Resources Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir.1995)). "Our role is limited to determining whether the district court abused its discretion. The question is whether the district court was entirely without foundation, in law and in fact, for its decision awarding fees." *Meinhold*, 123 F.3d at 1279. Judge Levi was correct and surely did not abuse his discretion.