T.C. Memo. 1999-160


UNITED STATES TAX COURT


J. LESLIE JAMES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13599-97.                    Filed May 12, 1999.


J. Leslie James, pro se.

<u>John Weeda</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a $71,652 deficiency in petitioner's Federal income tax for 1993.  Respondent also determined that petitioner is liable for additions to tax for 1993 of $12,425 for failure to file a timely return under section 6651(a), and $1,980 for failure to pay estimated tax under section 6654(a).

Respondent now concedes that petitioner overpaid his 1993 Federal income tax by $6,267.65. The sole issue for decision is whether we have jurisdiction under section 6512(b) to award a refund of his overpayment for 1993. We hold that we do not.

Unless otherwise indicated, section references are to the Internal Revenue Code as amended. Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner lived in Littleton, Colorado, when he filed the petition.

A.  Petitioner's Federal Income Tax Returns for 1991 and 1992

Petitioner had extensions to file his 1991 return on August 15, 1992, and his 1992 return on October 15, 1993. He filed his 1991 return on September 28, 1992, and his 1992 return on August 23, 1994.

B.  Preparation of Petitioner's 1993 Return

Petitioner's preparer, Richard Ball (Ball) of Ball Accounting & Data Centers, Inc., prepared a joint Federal income tax return for 1993 for petitioner and his wife, Michelle James. Ball had prepared tax returns for petitioner for more than 15 years before 1993. During that time, Ball prepared and petitioner filed many tax returns, such as gasoline excise tax returns, for petitioner and for his two corporations.

Ball had health problems that made it difficult for him to work from March to August 1994. Ball's poor health caused a backlog of work at his office in 1994.

On April 15, 1994, Ball mailed an application to respondent for automatic extension to file petitioner's 1993 income tax return (Form 4868). On August 12, 1994, Ball mailed an application to respondent to extend the time to file petitioner's 1993 return to October 15, 1994.

Ball finished preparing petitioner's 1993 return on August 23, 1995. Ball and members of his firm used routing control sheets to track each of petitioner's returns from the time petitioner first came to the office until he received his return. Ball's office manager, Lyn Gore (Gore), signed the control sheet and packaged petitioner's 1993 return with an invoice and instructions on August 23, 1995. Gore prepared an envelope with postage so that petitioner and his wife could readily sign the return and mail it. Ball signed petitioner's 1993 return as preparer on August 31, 1995. Petitioner picked up his 1993 return at Ball's office on August 31, 1995.

Petitioner and his wife paid income tax for 1993 of $31,000 by withholding, $2,881 by estimated tax payments and an amount applied from their 1992 return, and $4,727 by check attached to their Form 4868 extension request. They indicated on their 1993 return that they had a $7,421 overpayment, which they directed

respondent to apply to their 1994 estimated tax.  Thus, they did not expect to receive a refund.

C.  The Notice of Deficiency and Correspondence About Petitioner's 1993 Return

Petitioner cannot specifically remember mailing his 1993 return in 1995, and he has no record that he mailed it in 1995. Respondent mailed a notice of deficiency for 1993 to petitioner on March 24, 1997.  On April 14, 1997, Ball wrote a note to petitioner in which Ball said:

> I'm quite sure the '93 return was filed in August of '95, but the IRS does not recognize it.
> To protect the refunds from the IRS and the state, we need to resubmit the returns by 4-15-97.
> Please sign (again) the Federal return and State return on the 2nd page where X's are located.  You can date it 8-31-95 as I did or 4-14-97, it doesn't really make any difference.
> Be sure to send via certified mail.  Have the postman stamp (date stamp) the white copies of the cert mail receipts so we can prove timely mailing if we need to.  Also be sure to keep the receipts and return them to me so I can put them in the file.
> Sorry for any inconvenience.

D.  Petitioner's 1993 Return Filed April 15, 1997

On April 15, 1997, petitioner and his wife signed and filed a joint Federal income tax return for 1993 with a handwritten note at the top stating "Please Do Not Duplicate".  Ball's copy of this return is stamped April 15, 1997.  "Reference, Resubmitted 1993 1040" is handwritten on Ball's copy of this return.

Respondent has no record of receiving a 1993 return from petitioner before April 15, 1997. Petitioner and respondent stipulate that petitioner and his wife overpaid their 1993 income tax by $6,267.65.

E. Petitioner's Federal Income Tax Returns for 1994 to 1996

Petitioner requested and received extensions of time to October 15, 1995, 1996, and 1997, to file his Federal income tax returns for 1994, 1995, and 1996, respectively. He had not yet filed those returns as of the time of trial in 1998.

OPINION

A. Background and Contentions of the Parties

The Tax Court has jurisdiction to award to a taxpayer a refund of overpaid taxes which the taxpayer paid during either the 2 years before respondent issued the notice of deficiency or 3 years before the taxpayer filed his or her return. Secs. 6511(b)(2)(A) and (B), 6512(b)(3)(B); Commissioner v. Lundy, 516 U.S. 235, 242 (1996). The 2-year period applies if the taxpayer filed his or her income tax return after respondent issued a notice of deficiency for that year. Secs. 6511(b)(2)(B), 6512(b)(3); Commissioner v. Lundy, supra at 243. Thus, if petitioner filed his 1993 Federal income tax return before respondent sent the notice of deficiency on March 24, 1997, then we would have jurisdiction to award a refund of $6,267.65 for 1993 if petitioner paid at least that much tax for 1993 during

the 3 years before the taxpayer filed his return.  However, if petitioner filed his 1993 Federal income tax return after March 24, 1997, then we would have jurisdiction only to award a refund of tax that he paid for 1993 during the 2-year period ending on that date.

Petitioner contends that the 3-year period applies because he filed his 1993 return before March 24, 1997.  Respondent contends that petitioner first filed his 1993 return on April 15, 1997, and thus the 2-year period applies.  Petitioner bears the burden of proof.  Rule 142(a).

B.    Whether Petitioner Mailed His 1993 Income Tax Return Before March 24, 1997

Petitioner testified that he could not specifically recall mailing his 1993 Federal income tax return in 1995.  Petitioner contends in his posttrial brief that he picked up the return at Ball's office on August 31, 1995, took it directly home for his wife to sign, then drove a short distance to the post office where he mailed the return.  It is clear that petitioner picked up the return at Ball's office on August 31, 1995.  However, he did not offer any evidence at trial that he took it home, that his wife signed it, or that he mailed it at the post office.  We may not consider factual allegations in briefs that are unsupported by the record.

Petitioner does not contend that he used certified mail to mail his 1993 return in 1995, and he has no record that he mailed

his 1993 return in 1995.  Respondent has no record of receiving a 1993 return for petitioner before April 15, 1997.[1]

Petitioner's testimony about mailing his 1993 return in 1995 was at best vague, unlike the testimony of the rural postmistress in Estate of Wood v. Commissioner, 909 F.2d 1155 (8th Cir. 1990), affg. 92 T.C. 793 (1989), who saw the taxpayer mail the tax return at issue, and the testimony of the taxpayers' personal secretary and employees in Carroll v. Commissioner, T.C. Memo. 1994-229, affd. 71 F.3d 1228 (6th Cir. 1995), who specifically remembered how the taxpayers handled the tax return at issue in that case.

Petitioner contends that Ball's routing control sheet establishes that he mailed his 1993 return on August 31, 1995. We disagree.  The control sheet shows that petitioner picked up his completed return at Ball's office on August 31, 1995, with an envelope bearing the proper address and postage; it does not show when the return was mailed.

Petitioner contends that the handwritten notes stating "Please Do Not Duplicate" on his copy and "Reference, Resubmitted 1993 1040" on Ball's copy of petitioner's return mailed on April

---

[1] This contrasts with Sullivan v. Commissioner, 985 F.2d 704, 706 (2d Cir. 1993), affg. in part and revg. in part T.C. Memo. 1991-492, where it was unknown whether the Commissioner had a record that the taxpayer had filed a return because the Commissioner had not checked the service center with which the taxpayer was required to file.

15, 1997, establish that petitioner mailed his 1993 return on August 31, 1995.  Petitioner contends that the note on his return shows that he believed that the 1993 return that he mailed on April 15, 1997, was a duplicate of a return he filed earlier.  We disagree.  The note on his return simply requests that the return not be duplicated.  The note on Ball's copy suggests that the author of the note believed that Ball's copy had been filed before April 15, 1997.  However, the record does not show who wrote the note or what that person knew when he or she wrote it. The notes do not establish that petitioner mailed his 1993 return before March 24, 1997.

Petitioner contends that he proved with evidence of habit that he mailed his 1993 return before March 24, 1997.  Rule 406 of the Federal Rules of Evidence provides that evidence of habit is relevant to prove that the conduct of a person on a particular occasion conforms to that person's habit.  Petitioner testified that his habit was to pick up his income tax return from Ball's office and take it home for his wife to sign.  Petitioner testified that when he picked up a return "it's in the mail the same day."  He did not say who mailed his income tax returns or where or how they were mailed.[2]

---

[2] Petitioner testified that he mailed returns that did not require his wife's signature at a post office in Golden, Colorado, near his office.

The record does not show that petitioner had good tax return filing habits. Petitioner habitually filed his Federal income tax returns late. He had extensions of time to file his returns for 1991, 1992, 1993, 1994, 1995, and 1996, but did not file them until after the extended time had passed. As of the date of trial, petitioner had not filed his returns for 1994, 1995, and 1996.

Petitioner contends that Ball had valid reasons for not preparing petitioner's returns for 1994, 1995, and 1996. We disagree. Ball's explanations were vague and unsatisfactory. Ball attributed the delay to his health problems. However, he testified that others in his office could prepare petitioner's returns. Ball testified that petitioner's claim for a refund was a problem on petitioner's 1994 return. However, Ball testified that he eventually decided to prepare a return for petitioner for 1994 without applying for the refund. Ball testified that he wanted petitioner to claim a loss on petitioner's 1995 return under section 1244 related to a liquor store. However, petitioner kept no records for the store. Ball said that he had all of the data required for petitioner's 1996 return before April 15, 1997. Ball's testimony does not convince us that petitioner had valid reasons for not filing his 1994, 1995, and 1996 returns.

Petitioner relies on <u>Hiner v. Commissioner</u>, T.C. Memo. 1993-608, where we said:

> Proof of mailing requires some proof that the return was placed in an envelope that was properly addressed, stamped, and placed in the mail. * * *

Petitioner contends that he satisfied the legal standard stated in <u>Hiner</u> because Ball prepared his 1993 tax return and gave him a properly addressed envelope with prepaid postage.

Petitioner erroneously relies on <u>Hiner</u>. We held in <u>Hiner</u> that the taxpayer did not prove that he mailed the return at issue. The taxpayer in <u>Hiner</u> testified about his tax return filing practices and that he believed he timely filed the return at issue. Here, petitioner's testimony is unpersuasive like that of the taxpayer in <u>Hiner</u>.

Petitioner contends that he conservatively estimated and prepaid taxes due, and that this shows that he filed his 1993 return before March 24, 1997. We disagree. Paying estimated tax is not evidence that petitioner filed a return for 1993.

Petitioner contends that respondent has the burden of proving that he did not file a 1993 return before April 15, 1997. We disagree. Petitioner bears the burden of proving that he filed his 1993 return. Rule 142(a).

We conclude that petitioner did not file his 1993 return before March 24, 1997.[3]

C.    Whether We May Award Petitioner a Refund for 1993

Petitioner filed his Federal income tax return for 1993 after respondent issued a notice of deficiency for that year.

Petitioner last paid tax for 1993 on April 15, 1994, when he paid $4,727 with his request for an automatic extension of time to file.  Withheld income taxes are deemed paid on April 15 of the year following the taxable year.  Sec. 6513(b)(1).  Estimated income taxes are deemed paid on the last day prescribed to file the return without regard to extensions.  Sec. 6513(b)(2). Petitioner paid or is deemed to have paid income tax for 1993 on April 15, 1994, more than 2 years before March 27, 1997, when respondent issued the notice of deficiency for 1993.  Thus, we lack jurisdiction to award petitioner a refund of his overpayment for 1993.  Commissioner v. Lundy, 516 U.S. at 243.

Petitioner indicates that IRS Publication 556, Examination of Returns, Appeal Rights, and Claims for Refund (dated Rev. May 1997), did not mention the 2-year period referred to in Commissioner v. Lundy, supra.  However, that does not affect our conclusion because IRS publications are not legal authority.  See Zimmerman v. Commissioner, 71 T.C. 367, 371 (1978), affd. without

---

[3] In light of our conclusion, we need not decide respondent's contention that sec. 7502 is the exclusive means to prove timely mailing.

published opinion 614 F.2d 1294 (2d Cir. 1979); <u>Green v. Commissioner</u>, 59 T.C. 456, 458 (1972).

We conclude that we lack jurisdiction to award petitioner a refund of his overpayment for 1993.

To reflect concessions and the foregoing,

<u>Decision will be entered under Rule 155</u>.