**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 04-0354

RAFAEL G. RIOS, APPELLANT,

AND

No. 04-1840

JOHNNIE COLLINS, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 16, 2005                    Decided     June 27, 2006 )

*Kathy A. Lieberman,* of Washington, D.C., and *Shelley I. Stiles,* of Brentwood, Tennessee, for the appellants.

*Thomas A. McLaughlin*, with whom *Tim McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Gabrielle L. Clemons* (non-attorney practitioner), were on the brief, all of Washington, D.C., for the appellee.

*Robert V. Chisholm*, of Providence, Rhode Island, was on the brief for the National Organization of Veterans' Advocates as amicus curiae.

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN, LANCE, DAVIS, and SCHOELEN, *Judges*.

GREENE, *Chief Judge*, filed the opinion of the Court. LANCE, *Judge*, filed a concurring opinion. KASOLD, *Judge*, filed an opinion concurring in part and dissenting in part, in which HAGEL, *Judge*, joined.

GREENE, *Chief Judge*: Before the Court is the question whether, under 38 U.S.C. § 7266(c) Rafael G. Rios and Johnnie Collins timely filed Notices of Appeal (NOAs). The Court received briefs from the parties and amicus curiae, and a panel of three judges of the Court heard oral

argument in these cases on June 16, 2005. Pursuant to the Court's Internal Operating Procedures at V(b)(5), there was a call for full-Court consideration and on November 17, 2005, the matters were referred to the full Court. Because Mr. Rios' and Mr. Collins' NOAs were not timely received by the Court, we dismiss their appeals.

## I. BACKGROUND

### A. Mr. Rios' Appeal

On March 4, 2004, the Court received from veteran Rafael Rios a letter dated February 25, 2004, and postmarked March 1, 2004. Mr. Rios wrote that he had submitted to the Court on November 6, 2003, a self-styled Notice of Disagreement (NOD) as to an October 16, 2003, decision of the Board of Veterans' Appeals (Board), but that he had not yet received any response from the Court. The Court, having no record of receiving the November 6 document, construed Mr. Rios' February 25, 2004, letter to be an NOA from the October 2003 Board decision; the letter was deemed received by the Court on March 1, 2004, the date of the postmark on the envelope in which the letter was contained. The deadline for filing an NOA to the October 16, 2003, Board decision was February 13, 2004. *See* 38 U.S.C. § 7266(c). Because Mr. Rios' letter was received and filed by the Court after the deadline, more than 120 days after the Board mailed its decision to Mr. Rios, the Court ordered Mr. Rios to show cause why his appeal should not be dismissed.

In response to the show-cause order and two subsequent Court orders granting him time to submit additional information, Mr. Rios submitted a copy of the November 6, 2003, document, a copy of a "Page of Registry of Sent Correspondence," maintained by the Puerto Rico Public Advocate for Veterans Affairs (PRPAVA), and two affidavits from Mrs. Santa Virgen Cruz Carrion, an employee of the PRPAVA who is responsible for logging and handling the mail for PRPAVA. There is no dispute that the November 6, 2003, document, the self-styled "NOD," meets all of the substantive requirements of an NOA. Mrs. Cruz Carrion attests that she personally mailed the document by placing it in the U.S. Mail on November 6, 2003. She further states that the mailing was recorded on the "Page of Registry of Sent Correspondence," which contains a notation of a mailing to the Court on behalf of Mr. Rios. In addition to sending a copy of the NOA to the Court, Mr. Rios states that a copy of the November 6, 2003, document also was sent to the VA Office of

2

General Counsel, which also is noted on the registry.

### B. Mr. Collins' Appeal

On October 6, 2004, the Court received Mr. Collins' NOA from a January 5, 2004, Board decision. The deadline for filing an NOA to the January 5, 2004, Board decision was May 4, 2004. Because Mr. Collins' NOA was received more than 120 days after the date of the Board decision, he was ordered to show cause why his appeal should not be dismissed. Mr. Collins replied, through counsel, that on April 30, 2004, an NOA from the January 5, 2004, Board decision was placed in the U.S. Mail at the Brentwood, Tennessee, Post Office and that he had only discovered that the Court did not have his April 30 NOA when counsel filed a notice of appearance on September 24, 2004. Mr. Collins submitted an affidavit to this effect by his counsel's legal assistant and also submitted a copy of a sales receipt from the Brentwood Post Office indicating that on April 30, 2004, mail was sent by First Class Mail to "Washington, DC 20004."

## II. CONTENTIONS OF THE PARTIES

Mr. Collins, Mr. Rios, and amicus curiae generally argue that the NOAs were timely filed under any one of three theories. First, the parties argue that they have both demonstrated that their NOAs were placed in the U.S. Mail and that, under the common law mailbox rule, the NOAs should be presumed to have been delivered to and received by the Court in regular time, and that this presumption has not been rebutted.[1] Second, the parties argue that extrinsic evidence can be used to show that a postmark indicating the timely date of mailing was affixed on the envelope containing the NOA and, therefore, the NOA should be considered timely under the statutory postmark rule, 38 U.S.C. § 7266(c)(2). Third, the parties argue that they are entitled to equitable tolling of the filing period. *See Bailey (Harold) v. West*, 160 F.3d 1360 (Fed. Cir. 1998) (en banc). The Secretary contends that 38 U.S.C. § 7266(c)(2) is the sole exception to the requirement that an NOA be actually received by the Court for it to be timely, and that, therefore, the common law mailbox rule is not applicable.

---

[1] In *Rosenthal v. Walker*, the U.S. Supreme Court stated that, under the common law mailbox rule, "if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." 111 U.S. 185, 193 (1884).

3

## III. ANALYSIS

In order to obtain review by the Court of a final Board decision, an appellant must timely file an NOA with the Court. *See* 38 U.S.C. § 7266(a); *Marsh v. West*, 11 Vet.App. 468, 469 (1998) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988)). To be timely under Rule 4 of the Court's Rules of Practice and Procedure (Rules) and precedents construing 38 U.S.C. § 7266(a), an NOA must generally be filed with the Court within 120 days after notice of the Board decision is mailed to an appellant. 38 U.S.C. § 7266(a); *see Cintron v. West*, 13 Vet. App. 251, 254 (1999); *Leonard v. West*, 12 Vet.App. 554, 555 (1999) (per curiam order). Under section 7266(c), however, an NOA will be considered received by the Court (1) "[o]n the date of receipt by the Court, if the notice is delivered," or (2) "[o]n the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed." 38 U.S.C. § 7266(c).

The Court has never applied the common law mailbox rule to section 7266. Under the common law mailbox rule "if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884); *see also Hagner v. United States*, 285 U.S. 427, 430 (1932); *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998); *Estate of Wood v. Comm'r*, 909 F.2d 1155, 1161 (8th Cir. 1990). Thus, applying this rule, an NOA would be considered received and filed by the Court once placed with the U.S. Postal Service even though not actually received by the Court, provided that the NOA was mailed within the 120-day filing period and with sufficient time to be received by the Court within the 120-day filing period.

### A. Section 7266 and the Common Law Mailbox Rule

#### *1. Applicability*

Under Article I of the U.S. Constitution, Congress established this Court to have exclusive jurisdiction to review decisions of the Board. Veterans Judicial Review Act of 1988 (VJRA), Pub. L. 100-687, Title III, Sec. 301, 102 Stat. 4113 (codified as amended at 38 U.S.C. § 7251 (formerly § 4051)); *see also* 38 U.S.C. § 7252. Additionally, section 4066 of title 38, U.S. Code, provided:

4

(a) In order to obtain review by the [Court] of a final decision of the [Board], a person adversely affected by that action must file a[n NOA] with the Court. Any such notice must be filed within 120 days after the date on which notice of the decision is mailed pursuant to section 4004(e) of this title.

38 U.S.C. § 4066, *renumbered* § 7266 and *amended by* the Department of Veterans Affairs Health-Care Personnel Act of May 7, 1991, Pub. L. 102-40, § 402(b)(1), (d)(1), 105 Stat. 238, 239. Congress also authorized the Court to prescribe its own rules of practice and procedure. *See* 38 U.S.C. § 4064 (now § 7264); *see also* H.R. Rep. No. 100-963, at 33 (1988) (stating that petitioner would file "formal appeal with the [Court] in accordance with the rules prescribed by the Court").

Neither section 4066, nor its legislative history, provides a definition of "must be filed"; however, in 1990, the Court offered clarification of section 4066 in *Torres v. Derwinski*, 1 Vet.App. 15 (1990). In that case, the appellant, in July 1989, notified a VA regional office (RO) that he disagreed with a Board decision. *Id*. at 16. The RO responded on October 2, 1989, stating that "[t]here is as yet no mailing address for the Court . . . , and rules of practice to govern procedural matters have not been issued." *Id.* The appellant sent a letter to the RO requesting (1) "full reconsideration by the Judicial Court" and (2) that the RO forward his NOA to the Court. *Id.* The RO did not do so and only notified the appellant of the Court's address on the expiration date of a legislative extension for filing NOAs. *Id.* Immediately after receiving the RO's notification letter, the appellant mailed his NOA to the Court, but it arrived five days after the extended time for filing an NOA. *Id.* In deciding whether to accept the NOA as timely, the Court determined that section 4066 "alone controls." *Id.* at 17. The Court compared section 4066, which required that an "[NOA] must be filed with the Court within 120 days," with Rules 3 and 4 of the Federal Rules of Appellate Procedure (FRAP), which required that an "[NOA] must be filed with the clerk of the district court within 60 days if the United States or an officer or agency thereof is a party." *Id*.; *see* 38 U.S.C. § 4066; FED. R. APP. P. 3, 4. The Court held that "where the address of the Court was not available, a written expression of dissatisfaction with the [Board's] decision and a desire for judicial review delivered to [VA] for forwarding to the Court is efficacious if delivered to the [VA] within the time prescribed for filing a[n NOA]." *Torres*, 1 Vet.App. at 17. However, the Court also announced: "[S]ince December 18, 1989, '[t]o be timely filed, the [NOA] must be *received* by the Clerk' of the Court within 120 days after the date on which notice of the [Board's] decision was mailed. [U.S.

VET. APP.] R. 4 [(interim)] (emphasis added)." *Id.*

Although Congress had designated the FRAP as the interim rules for the Court unless the Court established its own, Congress provided specifically that in the case of conflict between the FRAP and chapter 72 of title 38, U.S. Code, the statute would control. *See* Pub. L. No. 101-94, § 203 (designating FRAP as interim rules of Court unless otherwise provided for in statute). Thus, the Court held that section 4066 alone governed the filing of NOAs because the FRAP and section 4066 were inconsistent. *Torres*, 1 Vet.App. at 17. Nevertheless, the Court, in accepting the appellant's NOA as timely filed, relied upon a U.S. Supreme Court decision and an advisory committee note, both of which interpreted the FRAP. *Id.*; *see Houston v. Lack*, 487 U.S. 266 (1988) (noting FRAP's general rule of actual receipt but holding that prisoner's pro se effort to effectuate NOA outside traditional court facilities was sufficient to begin appeal process); FED. R. APP. P. 3 advisory committee's note ("Literal compliance [with filing requirements is not required] in cases in which it cannot fairly be exacted.").

In *Torres,* the Court relied upon its Interim General Rules and emphasized that the Court must actually receive an appellant's NOA before it can be filed. On April 4, 1991, the Court issued Miscellaneous Order No. 4-91, entitled "In Re: Rules of Practice and Procedure," which set forth and adopted the Court's Rules of Practice and Procedure, which became effective May 1, 1991. The order stated that the Court had "benefitted from experience since December 18, 1989, under [the] Interim General Rules which followed, with appropriate modification, the framework of the [FRAP]." Misc. No. 4-91, 1 Vet.App. XXIX (1991) (en banc order). The earliest version of Rule 4 of the Court's Rules of Practice and Procedure provided:

> To obtain review by the Court of a Board decision, a person adversely affected by that decision must file a[n NOA] within 120 days after the date on which notice of the decision was mailed by the Board to the last known address of the appellant and the appellant's authorized representative, if any. The [NOA], including one filed by facsimile or other printed electronic transmission, *must be received* by the Clerk within this time limit.

U.S. VET. APP. R. 4 (1991) (amended 1994) (emphasis added).

The Court further interpreted section 7266 (formerly section 4066) in *DiDonato v. Derwinski*, 2 Vet.App. 42 (1991) (consolidated with *Elegado v. Derwinski*). In that case, appellant DiDonato's NOA was mailed to the Court from Philadelphia, Pennsylvania, and the envelope was postmarked

on the 117th day after the Board decision was mailed; it did not arrive at the Court until six days after the 120-day appeal period had elapsed. *DiDonato*, 2 Vet.App. at 43. Similarly, appellant Elegado's NOA was mailed from the Philippines and postmarked on the 117th day after the mailing of the Board decision; it was not received by the Court until five days after the 120-day appeal period. *Id.* In deciding whether to accept the appellants' NOAs as timely, the Court stated that pursuant to section 7266(a), "an NOA must generally be *actually received* by, not mailed to, the Court within 120 days after the Board . . . decision is mailed to an appellant." *Id.* (citing *Elsevier v. Derwinski*, 1 Vet.App. 150, 152 (1991) ("[W]e regard it as an ineluctable conclusion that to be properly filed the NOA must be physically received by this Court")). The word "generally" was inserted to account for the doctrines of equitable tolling and equitable estoppel; however, the Court determined that neither doctrine applied in that case. *Id.* at 43-44; *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Bailey, supra,* (holding that equitable tolling of 120-day filing period may be warranted where VA misled or induced claimant into missing filing deadline). The Court held that neither appellant's NOA was timely filed because their NOAs had not been received by the Court within the 120-day-appeal period. *DiDonato,* 2 Vet.App. at 44. Judge Steinberg concurred with the decision with "great reluctance" but urged the Court to accept a postmark rule to ease the inequities caused by delays of the U.S. and foreign postal services. *Id.* (Steinberg, J., concurring).

In response to *DiDonato* and its progeny, Congress amended section 4066 to establish not only filing of an NOA on the date of its actual receipt, but also recognizing the date of the postmark on the envelope containing the NOA as the date an NOA was received by the Court. *See* S. Rep. No. 103-232, at 5 (1994). The U.S. Senate Committee on Veterans' Affairs stated in its Committee report that the Court's "adoption of Rule 4 [requiring actual receipt of an NOA] was clearly proper and within the scope of the Court's authority." *Id.* at 6. The Committee, however, expressed its concern for veterans who lived far from Washington, D.C., particularly considering the periodic delay of the U.S. Postal Service. *Id.* at 5-6. On October 25, 1993, the chairman of that committee asked the then-Chief Judge of the Court, Chief Judge Nebeker, for the Court's views on adopting a postmark rule. *Id.* at 9. Chief Judge Nebeker expressed the Court's disapproval of the proposed postmark rule. *Id.* at 9-10. The committee report also contained a July 1992 letter from Chief Judge Nebeker, which included a memorandum prepared by the legal counsel to the Clerk of the Court that

expressed that the "Court's physical delivery rule is preferable to the proposed postmark rule." *Id.* at 11-17. In reaching this conclusion the memorandum discussed the other Article I courts and the FRAP and explained:

> Congress provided the veteran with a four-month period to get his [or her NOA] to the Court. This 120-day period gives the veteran, at minimum, 60 more days to file an appeal with this Court than the average citizen has when appealing a federal district court decision. Moreover, the [Board], at the time it sends notice of its decision, is required to advise the veteran of his [or her] appellate rights and the Court's mailing address. So the veteran simultaneously receives the [Board] decision and information about the Court, its location, and his [or her] right to judicial review.

> The Court, in turn, through its rules, decisional law, and provision of information and materials to veterans, has established a *bright-line standard* for the timely filing of a[n NOA]. It is clear and easy for pro se veterans to understand. Facsimile and other means of electronic filing are permitted. In addition, the Court has liberally construed Rule 3 concerning what constitutes a[n NOA] with a view toward ensuring timely filing. Thus, when a pro se veteran timely files papers which clearly evince his [or her] intent to appeal, the Court has found substantial compliance with the [NOA] requirements and exercised jurisdiction over the appeal.

> A mail box rule has the potential to confuse the veteran to the extent it requires the use of certain types of mail like registered or certified mail with a return receipt requested. *A good example of how perplexing a mail box [sic] rule can be is 26 U.S.C[.] § 7502, the Internal Revenue Code provision which applies to the Tax Court.* Although advocated by Senator Cranston, mail box rules, with their various requirements, are not easily understood or complied with. In the event of an untimely received [NOA] with an illegible postmark, for example, or one not sent through the U.S. Postal Service, the Court would be in the position of seeking affidavits and other evidence to resolve the jurisdictional question. Unless carefully and simply drafted, veterans can be frustrated by such a rule, and this Court can be stymied by it as it attempts to get beyond jurisdiction and proceed to the merits.

> Again, *what we have now is simple, explicit, and easily complied with*. The veteran has ample time to get his [or her NOA] to the Court, and rules that he [or she] can understand and follow. Further, *as a national federal appellate court, the Court . . . has adopted a rule for filing appeals that is similar to those adopted by a majority of the federal circuit courts*.

*Id.* at 16-17 (emphasis added). (It appears from the Chairman's request and the substance of the memorandum that the abovementioned references to the "mailbox" rule are in fact intended to refer to the "postmark" rule.)

8

The resulting amendment to section 7266 did not reject the Court's actual-receipt rule; instead, the existing provisions of that statute were preserved and incorporated in paragraph (a)(1). *See* Veterans Benefits Improvements Act of 1994 (VBIA), Pub. L. No. 103-446, § 511(a), 108 Stat. 4645, 4670; *see also Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 277 (8th Cir. 1983) (stating that Congress acts with knowledge of existing law, and that "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction"). The amendment also added the following provisions:

> (2) An appellant shall file a[n NOA] under this section by delivering or mailing the notice to the Court.

> (3) A[n NOA] shall be deemed to be received by the Court as follows:

>> (A) On the date of receipt by the Court, if the notice is delivered.

>> (B) On the date of the [U.S.] Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.

Pub. L. No. 103-446, § 511(a). In addition to liberalizing the Court's actual-receipt rule, the amendment restricted the Court's ability to deem an NOA as received:

> (4) For a notice of appeal mailed to the Court to be deemed to be received under paragraph (3)(B) on a particular date, the [U.S.] Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

*Id.* This subsection of 7266 contemplates that an NOA, if mailed, must be received by the Court to allow for an inspection of the "cover in which the notice is posted."

Thus, the plain meaning of the language in section 7266 explains that, regardless of the means chosen by an appellant to submit an NOA, the Court must actually receive that NOA. *See* 38 U.S.C. § 7266. Neither this amendment, as the sole exception to the actual receipt rule, nor its legislative history suggests that the Court must accept for filing an NOA under section 7266 that is never actually received by the Court. *See, e.g., Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) ("Applying the familiar canon of expressio unius est exclusio alterius ['the expression of one thing is the exclusion of another'], we conclude that Congress did not intend to allow exceptions to

the rule of finality in addition to the two that it expressly created."); *BMW Mfg. Corp. v. United States*, 241 F.3d 1357, 1361 (Fed. Cir. 2001) ("It thus appears that Congress expressly provided for the exemption of certain merchandise from the [Harbor Maintenance Tax]. Where it did not so provide, it is reasonable to conclude that it did not so intend.").

Recently, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) rejected an argument that the Court should treat as timely received an NOA that was deposited with "the Postal Service or a private courier service." *Mapu v. Nicholson*, 397 F.3d 1375, 1378 (Fed. Cir. 2005). The Federal Circuit discussed in general terms section 7266 and its legislative history and concluded that "it is clear that Congress required *actual receipt* of the [NOA] and *specifically limited* the exception created by the postmark rule to [NOAs] sent through the Postal Service." *Id.* at 1381 (emphasis added). The Federal Circuit held that "for an appeal to be timely, the [Court] must receive the [NOA] within 120 days of the Board's decision, or the notice must be deemed received within 120 days of the Board's decision pursuant to the postmark rule of sections 7266(c) and (d)." *Id.* at 1378. Although *Mapu* involved the mailing of an NOA through a commercial delivery service, and not with the U.S. Postal Service, its holding is equally applicable to the facts presented in these appeals. The Federal Circuit provided a general discussion of section 7266, announced its holding, and then applied the law to the specific facts in *Mapu* to find that the appellant had not satisfied the timeliness requirement of section 7266. *Id.* at 1378. The Federal Circuit did not limit its discussion of section 7266 to NOAs delivered through commercial delivery services. Instead the Federal Circuit stated:

> Congress added subsections (c) and (d) in an effort to liberalize the time requirement for filing a[n NOA]. *That legislation would have been unnecessary if sections 7266(a) and (b) already treated filing as complete when the [NOA] was deposited with the Postal Service or a private courier service.* Given the structure of section 7266 and its legislative history, we decline to interpret subsections (a) and (b) in a way that would read subsections (c) and (d) out of the statute.

*Id.* (emphasis added).

The *Mapu* holding made even more clear that the date of filing of an NOA can only be (1) the date of actual delivery or (2) the date of a legible U.S. Postal Service postmark stamped on the received envelope containing the NOA. Thus, section 7266, its legislative history, and now the Federal Circuit's decision in *Mapu* make clear that, absent actual receipt by the Court within the appeal period, only the postmark stamped on the NOA's cover may be introduced as evidence of time

10

of receipt of an NOA. *See, e.g., Cook, supra.* Indeed, applying the common law mailbox rule to section 7266 would do exactly what the Federal Circuit sought to avoid in *Mapu*–read subsections (c) and (d) out of that statute. That we will not do. There is no room for broad construction here, thus the Court must give effect to the clearly expressed intent of the legislative authority. *See Weddel v. Sec'y of Health and Human Servs.*, 100 F.3d 929, 932 (Fed. Cir. 1996). The generous spirit that suffuses the law generally, such as the rule espoused by the dissent, cannot override the clear meaning of section 7266.

### 2. The 26 U.S.C. § 7502 Tax Cases

In response to the parties' argument that, under the common law mailbox rule, their NOAs should be presumed to have been delivered to and timely received by the Court, the Secretary would have us adopt the approach taken by the U.S. Courts of Appeals for the Second and Sixth Circuits in addressing 26 U.S.C. § 7502, a statute similar to section 7266. Section 7502 sets forth two statutory exceptions to the physical delivery rule for documents mailed to the Internal Revenue Service (IRS) and provides a rebuttable presumption of receipt to those taxpayers who can provide a timely postmark or registered or certified mail receipt. The Second Circuit held that the legislative history of section 7502 indicated that the statute only applied if the petition was actually delivered to the tax court. *See Deutsch v. Comm'r*, 599 F.2d 44, 46 (2nd Cir. 1979). Similarly, the Sixth Circuit construed section 7502 as creating two separate exceptions to the requirement of physical delivery, and held that section 7502(a), "both by its terms and as revealed in the legislative history, applies only in cases where the document is actually received by the I.R.S. after the statutory period." *See Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986). The U.S. Courts of Appeals for the Eighth, Ninth, and Tenth Circuits, however, have rejected the holdings of the Second and Sixth Circuits. Those circuits have concluded that creation of a Statutory Postmark rule in section 7502 did not abrogate the applicability of the common law mailbox rule because there was no evidence of congressional intent to do so. *See Anderson v. United States*, 966 F.2d 487 (9th Cir. 1992) (timeliness of tax return filed with IRS); *Sorrentino v. IRS*, 383 F.3d 1187 (10th Cir. 2004) (same); *Estate of Wood, supra* (timeliness of estate's special use election to IRS).

Section 7502, however, does not exclusively govern the filing of NOAs with the U.S. Tax Court or any other federal court; instead, it provides for the timely filing of "any return, claim,

11

statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws." 26 U.S.C. § 7502(a)(1). Thus, it is no surprise that various federal circuit courts have arrived at differing conclusions when interpreting a statute that affects the filings of such a broad array of documents and payments. *See Anderson, Sorrentino, Estate of Wood, Deutsch,* and *Miller,* all *supra*. Indeed, in his statement to the Senate Committee on Veterans' Affairs, Chief Judge Nebeker declared that 26 U.S.C. § 7502 was "perplexing." *See* S. Rep. No. 103-232, at 16. Conversely, section 7266 addresses only NOAs filed with this Court and, as discussed below, provides clear instruction regarding the filing of NOAs that have been mailed to the Court.

Although it is conceivable that the plain language of 26 U.S.C. § 7502 does not require the actual receipt of any documents or payments mailed under the provisions of the internal revenue laws, the plain language of that statute also does not indicate that receipt by an agency of the actual postmark is necessary to deem as received a document, filing, or payment. *See* 26 U.S.C. § 7502 (stating that "the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.") Conversely, section 7266 retains its original language that requires the actual receipt of NOAs within the 120-day judicial appeal period. 38 U.S.C. § 7266(a). Moreover, section 7266 contains explicit instructions that (1) an NOA that is mailed through the U.S. Postal Service must contain a legible postmark and (2) a determination regarding the legibility of a postmark can only be made by this Court. 38 U.S.C. § 7266(d). Contrary to our dissenting colleagues' beliefs, these explicit instructions manifest an implicit, if not explicit, intent by Congress to preclude the application of the common law mailbox rule to this statute. *See generally Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110-11 (1991) (concluding that statute contravened common law after finding that application of common law would render statute useless); *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 788-89 (1952) (concluding that Congress implicitly limited deductions and set-offs to those listed in statute). Indeed, if the confines of sections 7266(c) and (d) do not allow us to divine the date of an illegible postmark that the Court actually receives, it is inconceivable that we should do so for an NOA that never arrives.

12

Finally, 26 U.S.C. § 7502 specifically excludes the application of its postmark rule to "the filing of a document in, or the making of a payment to, any court other than the Tax Court." 26 U.S.C. § 7502(d)(1). This provision prevents a conflict between 26 U.S.C. § 7502 and 28 U.S.C. § 2107. Section 2107 of title 28, U.S. Code, which governs timeliness of appeals for the U.S. courts of appeals, provides that "no appeal shall bring any judgment, order, or decree in an action, suit[,] or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order[,] or decree." 28 U.S.C. § 2107; *see* FED. R. APP. P. 3 and 4 (requiring NOA to be filed with district clerk within statutory filing period). Neither 28 U.S.C. § 2107 nor the FRAP contains a postmark rule; instead, many federal courts have held that an NOA must be *received* by the district court before it may be filed. *See Houston, supra*; *see also Ward v. Atlantic Coast Line R.R.*, 265 F.2d 75, 80 (5th Cir. 1959) (rev'd on other grounds) ("[W]e do not depart from the well-established principle that the jurisdictional requirement that notice be filed within thirty days is not met by deposit of notice in the mail in time for it to reach the clerk's office in the usual course of mail delivery within the time allowed."). Thus, although 26 U.S.C. § 7502 and section 7266 are alike in that they both contain a postmark rule, the language, purpose, and application of section 7266 is more analogous to the FRAP than to 26 U.S.C. § 7502.

### 3. Summary

As discussed above, applying the common law mailbox rule to the NOA requirements of section 7266 creates an inconsistency with the requirement that an NOA must be received or "deemed to be received" by the Court within the 120-day filing period. To avoid such inconsistency, we hold that subparagraphs (c) and (d) of section 7266 preclude the Court from applying the common law mailbox rule in order to deem timely an NOA that was either never received by the Court or was received late with an illegible postmark.

### B. Statutory Postmark Rule and Extrinsic Evidence

The parties argue that extrinsic evidence can be used to show that a timely postmark indicating the date of mailing was affixed on the envelope containing the NOA and, therefore, that their NOAs should be considered timely under the statutory postmark rule, 38 U.S.C. § 7266(c)(2). As discussed above, section 7266 does permit, as an exception to the actual delivery rule, an NOA that was mailed through the U.S. Postal Service to be deemed delivered and received on the date of

the postmark. *See* 38 U.S.C. § 7266(c). It does not, however, permit the use of extrinsic evidence to establish the date of the postmark. When amending section 7266, Congress considered the Court's reluctance to accept extrinsic evidence to determine the date of mailing of an NOA and balanced these concerns against its desire to liberalize the rules for filing an NOA with the Court. As a result, the Senate Committee report stated that the proposed amendment to section 7266 would require that an NOA be deemed received by the Court on the date it is postmarked and that "*[o]nly* legible [U.S.] Postal Service postmarks would be sufficient" in making a deemed-received determination. S. Rep. No. 103-232 at 6; 140 Cong. Rec. 28,849 (1994) (Joint Explanatory Statement explaining that the postmark rule would not be broadly applicable, but applicable only to documents bearing "legible United States Postal Service postmarks"); *see* 140 Cong. Rec. at 28,840 (containing Senator Rockefeller's summary of the major provisions of H.R. 4386).

Morever, the plain language of section 7266 indicates that, regardless of the means chosen by an appellant to send to the Court an NOA, the Court must actually receive that NOA. Not only is the use of extrinsic evidence not provided for by statute, this Court specifically cautioned against a rule that would require "seeking affidavits and other evidence to resolve the jurisdictional question." S. Rep. No. 103-232, at 16-17. Indeed, if Congress had intended for the introduction of extrinsic evidence to establish the date of mailing, section 7266 would have reflected that intent. *Cf.* 26 U.S.C. 7502(c) (providing that a certified or registered mail receipt is prima facie evidence that a document that was mailed was delivered, and that the date of certification or registration is deemed to be the postmark date).

In *Evans (Janet) v. Principi,* this Court found an NOA to be timely received under section 7266. Evans, 17 Vet.App. 41, 47-48 (2003). In *Evans*, the Court received the appellant's NOA through the U.S. Postal Service five days after the 120-day judicial-appeal period. *Id.* at 46. After the Court received the appellant's NOA, the Court inadvertently discarded the envelope in which it was mailed. *Id.* Although the envelope bearing a legible U.S. Postal Service postmark was no longer available, the Court held that under the circumstances "a postmark-stamped certified-mail receipt satisfies the statutory requirement of a 'postmark stamped on the cover in which the notice is posted'" and that, therefore, the appellant's NOA was received on the date of the postmark on that receipt which was the same date that was on the cover. *Id.* at 47-48 (quoting 38 U.S.C.

14

§ 7266(c)(2)).  The Court relied on the fact that "the appellant . . . proffered a postmark stamp on a certified-mail receipt that, according to well-established [U.S. Postal Service] mailing and postmarking practices, was part of the envelope containing the NOA at the time the NOA was posted."  *Id*. at 47.  Thus, the Court did not consider extrinsic evidence, but rather, determined that, because the certified mail receipt was in fact part of the NOA cover, it therefore could, in accordance with section 7266(c), be considered to establish the date of receipt.  No such evidence is present in these cases.  A first class mail receipt is not the same type of receipt considered in *Evans*, nor certainly is an organization's postal registry log.

Nothing in *Evans, supra*, can be construed as an intent by this Court to expand section 7266(c) to allow an appellant to introduce extrinsic evidence to establish the date of mailing as a substitute for the Court's actual receipt of the NOA; rather, the Court's holding in *Evans* reenforces the plain language of section 7266, its legislative history, and the Federal Circuit's decision in *Mapu, supra,* that, absent actual delivery of the NOA to the Court, only the postmark on the envelope containing the NOA may be introduced as evidence to establish when the NOA was mailed.  Again, as with application of the common law mailbox rule, to allow the introduction of extrinsic evidence to establish the date of mailing would do exactly what the Federal Circuit sought to avoid in *Mapu*–read subsections (c) and (d) out of the statute and defeat the purpose of the rules regarding timely mailing and filing.

## C.  Applicability of Equitable Tolling

Finally, Mr. Rios and Mr. Collins argue that, because they actively pursued their appeals by attempting to timely file their NOAs, the 120-day period should be equitably tolled.  Under certain circumstances, equitable tolling of the judicial-appeal period may be appropriate, *see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Bailey*, *supra* (discussing equitable tolling in veterans benefits context); *Evans (Billy) v. West*, 12 Vet.App. 396, 399 (1999), but it is the appellant who has the obligation "to produce any evidence supporting his claim for equitable tolling,"  *McCreary v. Nicholson*, 19 Vet.App. 324, 332 (2005).  In *Irwin*, the U.S. Supreme Court identified two situations not involving appeals to this Court where equitable tolling has been recognized–first, where the claimant has "actively pursued his judicial remedies by filing a defective pleading during the statutory period," and second, "where the claimant has been induced or tricked" by the opposing

15

party's misconduct. *Irwin*, 498 U.S. at 96. Courts, however, "have generally been much less forgiving in receiving late filings where the [appellant] failed to exercise due diligence in preserving his legal rights." *Id.*

In *Bailey, supra*, the Federal Circuit applying *Irwin* to NOAs to this Court held that equitable tolling applies to the 120-day judicial-appeal period in 38 U.S.C. § 7266(a). In *Bailey*, the appellant's reliance on a VA employee's statement that the appellant's judicial appeal would be processed was a sufficient basis for equitable tolling of the judicial-appeal period when it was discovered that the VA employee failed to file the appeal with the Court. *Bailey*, 160 F.3d. at 1361. Applying the second prong of *Irwin*, the Federal Circuit held that, "[g]iven the particular relationship between veterans and the government," equitable tolling could apply where, "[a]lthough there is no suggestion of misconduct," VA's conduct misled a claimant "into allowing the filing deadline to pass." *Id*. at 1365; *see Cintron,* 13 Vet.App. at 257 ("cause and effect" relationship must exist, i.e, appellant relied to his own detriment on action that VA took, or should have taken but did not, and equitable tolling is not invoked if "the appellant's reliance on VA was not the cause of the late filing").

The Federal Circuit has also recognized that equitable tolling of the 120-day appeal period applied to an appellant who filed his NOA at a location other than the Court. *See Brandenburg v. Principi*, 371 F.3d 1362, 1364 (Fed. Cir. 2004) (appellant misfiled the NOA with the Board rather than the Court); *Santana-Venegas v. Principi*, 314 F.3d 1293, 1296-98 (Fed. Cir. 2002) (appellant misfiled NOA with RO rather than Court); *Jaquay v. Principi*, 304 F.3d 1276, 1289 (Fed. Cir. 2002) (en banc) (appellant misfiled motion for Board reconsideration with RO rather than Board). Moreover, the Federal Circuit has held that ill health under certain circumstances may be a basis for tolling the judicial-appeal period. *See Arbas v. Nicholson*, 403 F.3d 1379, 1381-82 (Fed. Cir. 2005) (remanding to determine whether appellant's ill physical health prevented timely filing of NOA); *Barrett v. Principi*, 363 F.3d 1316, 1318-21 (Fed. Cir. 2004) (remanding to determine whether appellant's untimely filing of NOA was "direct result" of mental incapacitation). However, the Federal Circuit noted in *Mapu* that, in applying the doctrine of equitable tolling, "we have rejected the approach of looking to whether a particular case falls within the facts specifically identified in *Irwin*[, *supra*,] or one of our prior cases." *Mapu,* 397 F.3d at 1380; *see also Arbas*, 403 F.3d at 1381.

16

Additionally, this Court recently held that extraordinary circumstances can warrant the equitable tolling of the 120-day judicial-appeal period. *McCreary*, 19 Vet.App. at 330. In *McCreary*, the following test was established to determine equitable tolling based on extraordinary circumstances:

> First, the extraordinary circumstance must be beyond the appellant's control. Second, the appellant must demonstrate that the untimely filing was a direct result of the extraordinary circumstances. Third, the appellant must exercise "due diligence" in preserving his appellate rights, meaning that a reasonably diligent appellant, under the same circumstances, would not have filed his appeal within the 120-day judicial-appeal period.

*Id*. at 332 (citations omitted). The appellant, Mr. McCreary, asserted that the damage to his house by Hurricane Ivan caused him to misplace his VA paperwork. *Id*. at 326. The Court agreed that "a hurricane is a type of extraordinary circumstance that is beyond the appellant's control," but held that he had "failed to demonstrate that his untimely appeal was a direct result of Hurricane Ivan . . . [or] that he exercised due diligence in pursuing his appeal." *Id*. at 332. We reasoned, however, that the appellant had established only "that his untimely appeal was an *indirect* result of the hurricane–that is, in an effort to settle hurricane-related damage claims, he misplaced his paperwork to this appeal" and that "[a] person exercising due diligence would not have filed his NOA late simply because he 'misplaced' his paperwork." *Id*. at 332-33.

The matters before us do not pass the first element of the extraordinary circumstance test–i.e., lost mail is not, on its face, an extraordinary circumstance beyond one's control. *Cf. Hanger v. Abbott*, 73 U.S. (6 Wall.) 532, 542 (1867) (closing of courts in the South during the Civil War was an extraordinary circumstance warranting equitable tolling of the statute of limitations); *Seattle Audubon Soc. v. Robertson*, 931 F.2d 590, 595-96 (1991) (district court's erroneous interpretation of the statute prevented the plaintiffs from raising certain claims, which had, by that point, become time barred, and the court therefore equitably tolled the statute of limitations); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (equitable tolling warranted when plaintiff had been abducted, incarcerated, and tried in a foreign country). Indeed, no evidence has been presented showing any cause for the failure of delivery to the Court of any mail containing the appellants' NOAs. To be sure, the NOAs may have failed to reach their destination because of a U.S. Postal Service error. However, it is just as possible that the failure was due to matters within Mr. Rios' and

17

Mr. Collins' control–such as failing to accurately address or stamp envelopes. In any event, whether or not there exists here an extraordinary circumstance beyond their control that prevented their NOAs from reaching the Court is not dispositive of the issue at hand. For the reasons that follow, we find that neither appellant has demonstrated that his untimely appeal was a direct result of an act beyond his control.

Nothing in Mr. Rios' or Mr. Collins' submissions satisfies the burden of establishing that their untimely received NOAs were a direct result of extraordinary circumstances. *See McCreary*, 19 Vet.App. at 332-33 (holding equitable tolling not warranted where appellant failed to produce evidence "*directly* attributing his untimely appeal to the hurricane"); *Claiborne v. Nicholson*, 19 Vet.App. 181, 186 (2005) (holding that equitable tolling is not appropriate because appellant failed to establish that his failure to file a timely NOA was a "direct result" of his mental illness). Although Mr. Collins offers evidence showing that he mailed something to "Washington, DC 20004" during the judicial-appeal period, and Mr. Rios submitted evidence and affidavits stating that his NOA was mailed to the Court during the judicial-appeal period, neither party offers evidence directly attributing his untimely appeal to an extraordinary circumstance beyond his control that prevented delivery. Absent such evidence, the Court will not equitably toll the 120-day judicial-appeal period. Although the Court is sympathetic to the circumstances, the evidence presented does not support either parties' claim for equitable tolling. *See Reed v. Principi*, 17 Vet.App. 380, 383 (2003) (per curiam order) (rejecting appellant's argument that anthrax scare delayed Court's receipt of NOA because Court declined to speculate as to "how any anthrax-related mail-processing delay . . . may have affected when the appellant's NOA may have been delivered to the Court"); *see also McCreary, supra*. Furthermore, there is nothing otherwise in this appeal to suggest that tolling of the 120-day appeal period would be appropriate, *see Bailey, supra*.

## IV. CONCLUSION

Based upon the foregoing analysis, the Court holds that, under section 7266, Mr. Rios' and Mr. Collins' NOAs are untimely and thus, their appeals are dismissed.

LANCE, *Judge*, concurring: I fully concur with the conclusion reached by the majority that the appellants' appeals must be dismissed because their respective NOAs were not timely received

by the Court, and in the reasoning supporting its holding that the common law mailbox rule does not apply to 38 U.S.C. § 7266. However, I write separately because I do not believe that equitable tolling of the judicial-appeal period is permissible under these facts. To do so would overstep our role as a Court and violate the recognized separation of legislative and judicial power.

Under certain circumstances, equitable tolling of the 120-day judicial appeal period in 38 U.S.C. § 7266(a) may be appropriate. *See Arbas*, 403 F.3d. at 1381 (holding that equitable tolling of 120-day filing period may be justified if veteran shows that failure to file timely was direct result of physical illness); *Barrett,* 363 F.3d at 1321 (holding that equitable tolling of 120-day filing period may be justified if veteran shows that failure to file timely was direct result of mental illness); *Bailey,* 160 F.3d at 1364 (holding that equitable tolling of 120-day filing period may be warranted where VA misled or induced claimant into missing filing deadline); *McCreary,* 19 Vet.App. at 330 (holding that extraordinary circumstances can trigger consideration of the principles of equitable tolling). However, I believe Congress has expressly considered and rejected application of the common law mailbox rule to the filing of NOAs with the Court and, therefore, we cannot exercise our equitable powers to overrule an intentional decision of Congress. To that end, I note that the Supreme Court in *Irwin*, stated, in pertinent part:

> A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538, 63 L. Ed. 2d 607, 100 S. Ct. 1349 (1980) (quoting *United States v. King*, 395 U.S. 1, 4, 23 L. Ed. 2d 52, 89 S. Ct. 1501 (1969)). Once Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver. *Such a principle is likely to be a realistic assessment of legislative intent* as well as a practically useful principle of interpretation. We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. *Congress, of course, may provide otherwise if it wishes to do so.*

498 U.S. at 95-96 (emphasis added). In short, the U.S. Supreme Court recognized in *Irwin* that equitable tolling would not apply in the face of contrary Congressional intent. In other words, the equitable powers of the Court may be used to address all of the unique and unforeseeable fact patterns that the legislature could not possibly take the time to contemplate when writing legislation. However, in this case we have concluded that Congress has explicitly considered and consciously

chosen a postmark rule for this Court. Hence, it would be inappropriate to apply principles of equitable tolling to subvert Congressional choice and intent. For this reason, I believe that the appellants' equitable tolling argument must be rejected on the grounds that it would amount to a reversal of an intentional decision of Congress, which *Irwin* recognizes as inappropriate.

KASOLD, *Judge*, with whom HAGEL, *Judge*, joins, concurring in part and dissenting in part: The issue before the Court is whether veterans Rios and Collins complied with section 38 U.S.C. § 7266(c) such that their appeals may be heard by the Court. I believe that they have fully complied with the statute and that the common law mailbox rule serves to permit the proper exercise of our review authority over these appeals. Accordingly, I respectfully dissent from the Court's holding today that the common law mailbox rule does not apply to NOAs filed with the Court.[2]

### I. SECTION 7266

Congress promulgated the predecessor to section 7266, then 38 U.S.C. § 4066, in 1988. *See* Act of Nov. 18, 1988, Pub. L. 100-687, § 301(a), 102 Stat. 4116, § 4066, renumbered and amended at Act of May 7, 1991, Pub. L. 102-40, § 402(b)(1), (d)(1), 105 Stat. 238, 239. Under the original section 4066, an NOA had to be "filed" within 120 days after the date on which the notice of the Board decision was mailed. 38 U.S.C. § 4066(a) (1988). In response to the Court's harsh interpretation of the rule in *DiDonato v. Derwinski*, 2 Vet.App. 42 (1991), Congress amended section 7266 (formerly section 4066), which, as relevant to this case, is as it currently stands.

Pursuant to section 7266, an "appellant *shall file* a notice of appeal under this section *by delivering or mailing* the notice to the Court." 38 U.S.C. § 7266(a), (b) (emphasis added); *see also* Veterans Benefits Improvements Act of 1994, Pub. L. 103-446, § 511(a), 108 Stat. 4670 (1994). Thus, under the plain wording of the current statute, an appellant has two options with regard to filing an NOA: delivering it or mailing it. The use of the term "or" indicates these are independent actions. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (stating that "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise").

---

[2] I concur with the majority that the circumstances of these cases do not warrant application of the statutory mailbox rule or equitable tolling for extraordinary circumstances.

Thus, an appellant who mails his NOA has undertaken the second option and is not delivering it to the Court in the sense of personal delivery or use of a commercial delivery service. *See Mapu v. Nicholson*, 397 F.3d 1375, 1381 (Fed. Cir. 2005) (stating that "[i]t is clear that Congress wanted the postmark rule to apply only to a notice of appeal that was mailed using the Postal Service."); *see also* 140 Cong. Rec. 28,849 (1994) (stating that the postmark rule would not be broadly applicable, but that only "legible United States Postal Service postmarks would be sufficient" and that "if a [notice of appeal] is delivered to the Court (for example, by private courier or delivery service), it would be considered timely filed if it is received by the Court within the 120-day limit established by Congress."). If the NOA is delivered, i.e., not mailed, the date of delivery is the date of filing. *See* 38 U.S.C. § 7266(c)(1). On the other hand, if the NOA is mailed, it is deemed filed on the date of the United States Postal Service (USPS) postmark, provided that the postmark is legible. *See* 38 U.S.C. § 7266(c)(2).

The clear intent of Congress was to provide appellants the full benefit of the 120-day filing period if they mailed their NOA, provided the postmark was legible. *See* 38 U.S.C. § 7266. Although the statute does not address what happens when a mailed NOA has an illegible postmark or is lost by the USPS, this lack of explicit attention does not evince intent to deny claimants in these situations a hearing on their appeal. Congress does not write upon a clean slate, and is "understood to legislate against a background of common-law . . . principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 110-11 (1991); *see also Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 277 (8th Cir. 1983) (stating that Congress acts with knowledge of existing law, and that "absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction").

## II. THE COMMON LAW MAILBOX RULE

The common law mailbox rule has been in existence for well over a century, *see Howard v. Daly*, 61 N.Y. 362 (1875); *Huntley v. Whittier*, 105 Mass. 391 (1870); *Tanner v. Hughes*, 53 Penn. St. 289 (1867); *Callan v. Gaylord*, 3 Watts. 321 (1834), and was given full judicial imprimatur by the U.S. Supreme Court over 120 years ago, in *Rosenthal v. Walker*, 111 U.S. 185 (1884). Under the common law mailbox rule, "if a letter properly directed is proved to have been either put into the

21

post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal*, 111 U.S. at 193; *see also Hagner v. United States*, 285 U.S. 427, 430 (1932); *Lewis v. United States*, 144 F.3d 1220, 1222 (9th Cir. 1998); *Wood v. Comm'r*, 909 F.2d 1155, 1161 (8th Cir. 1990). This mailbox rule is based on the presumption that the officers of the government will do their duty in the normal course of business. *See Rosenthal*, *supra*; *see also United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("'[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties.'"); *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties").

### III. APPLICABILITY OF THE COMMON LAW MAILBOX RULE

The Court has never considered the application of the common law mailbox rule until now, and therefore has never excluded the applicability of the common law mailbox rule. The majority's reliance on the fact that the "Court has never applied the common-law mailbox rule" as an underlying basis for rejecting its application in these cases is misplaced. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (holding that an issue not "raised in briefs or argument nor discussed in the opinion of the Court" cannot be taken as "a binding precedent on this point"); *Webster v. Fall*, 266 U.S. 507 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents.").

Inasmuch as this is an issue of first impression for the Court, the proper analysis begins with the presumption that the common law mailbox rule is applicable, absent some evident statutory abrogation thereof. *See Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952); *see also Astoria*, *supra*. Contrary to the majority's discussion, there is absolutely no congressional intent to abrogate the common law rule as it applies to the filing of NOAs with the Court. There is certainly no explicit abrogation of the common law mailbox rule, *see Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,

22

474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

Moreover, absent evident abrogation, the common law mailbox rule would be abrogated only if application of the statute would render application of the common law mailbox rule useless, *see Astoria*, 501 U.S. at 108, 112-13 (stating that when a common law principle is well established it may be taken as a given that "Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident" and finding by implication, statute contravened common law after finding that application of the common law would render useless the statute at issue), or there is statutory purpose to the contrary, *see Isbrandtsen*, 343 U.S. at 783, 788-89 ("statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident" and finding Congress implicitly limited deductions and set-offs to those listed in statute); *see also United States v. Texas*, 507 U.S. 529, 534 (1993) (stating that in order to abrogate a common law principle, the statute must "speak directly" to the question addressed by the common law); *Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981) (same). Neither situation applies here.

The section 7266 statutory mailbox rule, which deems an NOA as filed on the date it is mailed if the USPS postmark is legible, does not render application of the common law mailbox rule useless or evidence an intent to exclude application of the common law mailbox rule. To the contrary, the common law mailbox rule dovetails with section 7266 and addresses the situation where mail is lost or mishandled such that it reaches its destination outside the normal course of business – the very situations not covered by the section 7266 statutory mailbox rule. Under the common law mailbox rule, mail that arrives at the Court with an illegible postmark or is otherwise reported as not received by the Court, can be shown to have been placed in the USPS within sufficient time to be received by the Court within the 120-day filing period and is presumed received absent clear evidence to the contrary, and therefore filed, on the date of regular business delivery. *See Sorrentino v. IRS*, 383 F.3d 1187, 1194 (10th Cir. 2004) (applying the common law mailbox rule to allow for timely filing); *Anderson v. United States*, 966 F.2d 487, 492 (9th Cir. 1992) (same); *Wood*, *supra* (same); *see also Lewis v. United States*, 144 F.3d 1220, 1221-22 (9th Cir. 1998) (finding

23

that when a postmarked envelope was not preserved by the IRS, a taxpayer may use the common law mailbox rule to prove timely receipt).

Moreover, application of the common law mailbox rule not only dovetails with the statutory mailbox rule in section 7266, it is wholly consistent with Congress' express requirement that an NOA be filed by delivering it to the Court or mailing it to the Court. It would be ironic indeed, if Congress on the one hand explicitly authorized use of the USPS but intended that a claimant who mailed his NOA in more than sufficient time for it to be received by the Court, should be denied an appeal because the USPS, a government agency, lost it. *See Baker v. Runyon*, 114 F.3d 668 (7th Cir. 1997) (stating that the USPS is a government agency). The irony of such an intent is heightened when one considers the fact that the presumption of regularity underpins the statutory start of the 120-filing period on the date the Board decision is mailed, as opposed to the date it is received by the claimant. *See Ashley v. Derwinski*, 2 Vet. App. 307, 308-09 (1992) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)) (stating that there is a presumption of regularity under which it is presumed that government officials "have properly discharged their official duties"); *see Crain v. Principi*, 17 Vet.App. 182, 190 (2003) (noting that the Court has routinely applied this presumption of regularity and its caselaw regarding the mailing requirements under 38 U.S.C. § 7104(e) to RO mailings to VA claimants); *Woods v. Gober*, 14 Vet.App. 214, 220 (2000) ("The Court has held that there is a presumption of regularity that the Secretary properly discharged his official duties by mailing a copy of a VA decision to the last known address of the appellant . . . .").[3] I cannot ascribe an intent to Congress that the Government be permitted the benefit of the presumption of regularity with regard to its mailings, but our Nation's veterans and others eligible for VA benefits be denied its equivalent application in the form of the common law mailbox rule. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("interpretive doubt is to be resolved in the veteran's favor"); *Boyer v. West*, 210 F.3d 1351, 1355 (Fed. Cir. 2000); *McKnight v. Gober*, 131 F.3d 1483, 1485 (Fed. Cir. 1997).

---

[3] Although the common law mailbox rule is not addressed in any of the cases cited in association with this footnote, it is apparent that it underlies the presumption of regularity attached to the mailing of the Board decision.

## IV. OTHER CONCLUSIONS

The majority's conclusion that the Federal Circuit's decision in *Mapu v. Nicholson*, 397 F.3d 1375 (Fed. Cir. 2005), forecloses the application of the common law mailbox rule is also misplaced. Although the Federal Circuit stated in *Mapu* that an NOA must be received or "deemed to be received" by the Court within the 120-day filing period, this holding cannot be taken out of context of the facts and analysis of that case, which did not involve the common law mailbox rule or the USPS and therefore cannot serve to foreclose application of the common law mailbox rule. *See Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997) ("It is axiomatic that the language in [the present case] must be read in light of the facts and issues that were before the court when the language was written"); *see also L.A. Tucker Truck Lines*, *Inc.* and *Webster*, both *supra*. Moreover, unlike the situation in *Mapu*, where an application of the statutory mailbox rule in section 7222 to a Federal Express delivery would be in direct conflict with the statute, which explicitly refers to the USPS, application of the common law mailbox rule presents no conflict, as discussed above.

Although I disagree with the majority's conclusion that our filing statute cannot be favorably compared to the Tax Court's filing statute, which also has a statutory mailbox rule, that is not the point. At least five Courts of Appeal have examined 26 U.S.C. § 7502, the Tax Court's filing statute. Although the first two Circuits to do so held that its statutory mailbox rule is exclusive of the common law mailbox rule, *see Deutsch v. Comm'r*, 599 F.2d 44 (2nd Cir. 1979) (holding that the legislative history of section 7502 indicated that the statute only applied if the petition was actually delivered to the tax court); *Miller v. United States*, 784 F.2d 728 (6th Cir. 1986) (holding that section 7502(a), "both by its terms and as revealed in the legislative history, applies only in cases where the document is actually received by the I.R.S. after the statutory period), neither case considered the longstanding judicial principle that "statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *Isbrandtsen*, 343 U.S. at 783; *see also Astoria*, 501 U.S. at 108. In contrast, three of the Circuits considered this principle and determined that the statutory mailbox rule was not exclusive of, and did not abrogate, the common law rule. *See Sorrentino*, 383 F.3d at 1187 (finding that the production of a registered, certified, or electronic mail receipt was not the only means by which a taxpayer could establish timely delivery but declined to

25

endorse the common law mailbox rule based solely upon a taxpayer's uncorroborated self-serving testimony of mailing); *Anderson*, 966 F.2d at 492 ("the language of [section] 7502 does not set forth an exclusive limitation on admissible evidence to prove timely mailing and does not preclude application of the common law mailbox rule"); *Wood*, 909 F.2d at 1160 (noting that Congress is presumed to have known of the common law presumption of delivery and further stating: "When interpreting a statute, we must consider the statute in light of judicial concepts existing before it . . . was enacted. 'The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.'" (quoting *Midlantic Nat'l Bank*, 474 U.S. at 501).[4]

Finally, to the extent the majority compares section 7266 with the Federal Rules of Appellate Procedure (FRAP), to which some courts have held that the mailbox rule does not apply, this comparison is misplaced. The specific language used in section 7266 directs an appellant to file an NOA by "delivering or mailing the notice to the Court" (38 U.S.C. § 7266(b)), while the language of the FRAP merely states "an appeal . . . may be taken only by filing a notice of appeal with the district clerk" within the specified time limits. *See* FED. R. APP. P. 3, 4. The FRAP give no guidance as to how an appellant may file an NOA, while section 7266 specifically allows for only two types of filing, and one of them is by mail. Moreover, while the Circuit Courts that employ the FRAP do not seem to permit application of the common law mailbox rule as such, many Circuits have found that failure by the USPS to properly deliver the mail in due course constitutes either good cause or excusable neglect to permit an extension in the filing of an NOA. *See, e.g.*, *Scarpa v. Murphy*, 782 F.2d 300 (1st Cir. 1986) (finding "inexcusable neglect of the Post Office to take more than five days . . . to transmit an adequately addressed letter three miles"); *Sanchez v. Board of Regents of Texas S. Univ.*, 625 F.2d 521 (5th Cir. 1980) (finding that "reliance on the normal course of delivery of mail is reasonable and may be the basis for a court to excuse otherwise untimely filing").

---

[4] The Federal Circuit has not yet addressed in a precedential opinion the applicability of the common law mailbox rule to the Tax Court's filing statute. *See Davis v. United States*, 230 F.3d 1383 (Fed. Cir. 2000).

26

## V. APPLICATION TO THE FACTS IN THIS CASE

### A. Rios

In order to establish that he timely mailed his NOA, Mr. Rios presents to the Court a copy of his November 6 NOA, a copy of a "Page of Registry of Sent Correspondence" from PRPAVA, and two affidavits from Mrs. Santa Virgen Cruz Carrion attesting to the mailing procedures at PRPAVA. In the affidavit, she describes the normal mailing procedure of PRPAVA and asserts that on the afternoon of November 6, 2003, she followed the normal mailing procedures to mail Mr. Rios' NOA to the Court and to the General Counsel. Mrs. Cruz Carrion attests that she personally mailed Mr. Rios' NOA by placing it in a U.S. mailbox on November 6, 2003. She further states that she logged the mailing of this document on the Page of Registry of Sent Correspondence, and the Court notes that there is a log of a mailing to the Court on behalf of Mr. Rios on the submitted registry. In addition to sending a copy to the Court, Mrs. Cruz Carrion states that a copy was also sent to the VA Office of General Counsel; this too is noted on the registry. The mailing address on the copy of the November 6 NOA is the correct address for this Court. In addition to the evidence of mailing submitted by Mr. Rios, he timely followed up his mailing with an inquiry in February 2004 regarding the status of his NOA.

Taken collectively, the evidence in this case, which includes affidavits of both Mr. Rios and a third party, contemporaneous business records, and a timely follow up regarding the status of the NOA, passes the high standard of proof of mailing necessary to invoke the common law mailbox rule presumption of delivery and thus shifts the burden of proving non-receipt to the Secretary. *See Sorrentino*, *supra*; *see also Knickerbocker Life Ins. v. Pendleton*, 115 U.S. 339, 347 (1885) (adopting the rule which "allows usage and the course of business to be shown for the purpose of raising a prima facie presumption of fact in aid of collateral testimony"), *Anderson*, *supra*; *Wood*, *supra*; *Village of Kiryas Joel Dev. Corp. v. Ins. Co. of N. Am.*, 996 F.2d 1390, 1394 (2d Cir. 1993) (finding sufficient to create presumption an employee's statement of customary office procedure plus record indicating that employee mailed letter); *Godfrey v. United States*, 997 F.3d 335, 338 (7th Cir. 1993) (finding that to invoke the presumption of delivery, a party may "either present evidence of actual mailing such as an affidavit from the employee who mailed the [return] or present proof of procedures followed in the regular course of operations which give rise to a strong inference that the

27

[return] was properly addressed and mailed."); *Myers v. Moore-Kile*, 279 F. 233, 235 (5th Cir. 1922) (using evidence that a document was mailed in the regular course of business as proof that it was actually mailed). Under the "known course of business in" the USPS, *see Rosenthal*, 111 U.S. at 193, the November 6, 2003, NOA would have been received by the Court on November 10, 2003, well before the end of the 120-day filing period, which was February 13, 2004. *See* United States Postal Service, *at* http//www.usps.com (last visited Sept. 20, 2005).

The only evidence the Secretary offers to rebut the presumption of delivery is the fact that the NOA was never logged in by the Court. During oral argument, the Secretary also contended that PRPAVA has mailed documents to the wrong address in the past. *See Santana-Venegas v. Principi*, 314 F.3d 1293 (Fed. Cir. 2002). That type of evidence is insufficient to rebut the presumption of delivery under the common law mailbox rule. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1241 (11th Cir. 2002) (stating that "a party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery"), *Arnold v. Wood*, 238 F.3d 992, 995 (8th Cir. 2001) (stating that the presumption of accuracy in favor of docket entries may be rebutted only by a stronger presumption such as the mailbox rule"); *In re Nimz Transp., Inc.*, 505 F.2d 177, 179 (7th Cir. 1974) (holding, in a case where petitioners alleged that they mailed wage claims to the clerk of the district court, that "the fact that the clerk's files did not contain the proof of claims" was "by itself insufficient to rebut the presumption of receipt"); *Jones v. United States*, 226 F.2d 24, 27 (9th Cir. 1955) ("The showing that a search of the pertinent files in the [addressee's] office revealed no record of the [relevant documents] having been filed is a purely negative circumstance, insufficient . . . to rebut the presumption of delivery."); *see also Tavares v. Principi*, 18 Vet.App. 131, 141 n.1 (Kasold, J., dissenting) ("Documents get lost in the mail and even lost at this Court." (citing *Evans v. Principi*, 17 Vet.App. 41, 42 (2003)).

### B. Collins

To establish that he mailed his April 30, 2004, NOA, Mr. Collins submitted to the Court an affidavit signed by Ms. Vicki L. Colvin, Mr. Collins' counsel's legal assistant, that describes the actions she took on April 30, 2004, to mail Mr. Collins' NOA to the Court. She states that on April 30, 2004, she mailed Mr. Collins' NOA to the Court from the Brentwood, Tennessee, Post

Office via First Class Mail.  She further states that she retained a copy of the sales receipt issued for that transaction.  A copy of the sales receipt issued by the Brentwood, Tennessee, Post Office is attached to her affidavit and reflects that on April 30, 2004, mail was sent from that office via First Class mail (paid postage of forty-nine cents) to "Washington DC, 20004."  Mr. Collins filed a notice of appearance on September 24, 2004, lending credence to an earlier filing of an NOA.  Given the totality of the evidence in this case, which includes a third party affidavit, a copy of a sales receipt from the mailing on April 30, 2004, and a timely filing of a notice of appearance, the evidence is sufficient to give rise to the high standard of proof to raise the presumption of delivery under the common law mailbox rule and to shift the burden of proving non-receipt to the Secretary.  *See Sorrentino*, *Anderson*, and *Wood*, all *supra*.  Under the "known course of business in" the USPS, *see Rosenthal*, 111 U.S. at 193, the April 30, 2004, NOA would have been received by the Court on May 4, 2004, which was the last day of the 120-day filing period.  *See* United States Postal Service, *at* http//www.usps.com (last visited June 6, 2006).

As with Mr. Rios, the only evidence the Secretary offers to rebut the presumption of delivery is the fact that the NOA was never logged in by the Court.  This evidence is insufficient to rebut the presumption of delivery under the common law mailbox rule.  *See Barnett*, *Arnold*, *In re Nimz Transp.*, *Inc*., and *Jones*, all *supra*.


## VI. CONCLUSION

Both Mr. Rios and Mr. Collins complied with section 7222 and filed their NOAs by mailing them with the USPS such that the NOAs should have been received by the Court in the normal course of business well within the 120-day filing period.  The common law mailbox rule creates a presumption that these NOAs were so received, and that rule was not expressly or impliedly abrogated by statute, and the presumption of delivery was not rebutted.  Accordingly, I would find that the NOAs in these cases were timely filed, and proceed to exercise the Court's jurisdiction to review the appeals.